# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHAEL AMES, | No. 45880-2-II |
| Appellant and Cross-Respondent, | |
| v. | |
| PIERCE COUNTY, | PUBLISHED OPINION |
| Respondent and Cross-Appellant. | |

JOHANSON, J. — Michael Ames appeals the trial court's CR 12(b)(6) dismissal of his claims for a writ of prohibition and declaratory judgment. Ames argues that he is entitled to (1) a writ of prohibition because the Pierce County Prosecuting Attorney's Office (PCPAO) acted outside its jurisdiction and (2) a declaratory judgment because a justiciable controversy exists and, in the alternative, this case presents an issue of major public importance. Pierce County cross appeals, arguing that the trial court abused its discretion when it granted Ames's motion for reconsideration, reversing its CR 11 sanctions order against Ames.

We hold that Ames failed to state claims for (1) a writ of prohibition because he does not allege facts that demonstrate the PCPAO acted outside or in excess of its jurisdiction and (2) a declaratory judgment because this controversy is not justiciable nor is this an issue of major public importance. Regarding the County's cross appeal, we hold that the trial court did not abuse its discretion when it concluded that Ames's claims are not baseless because he argued for a good

faith extension of the law and supported it with a reasonable inquiry into relevant precedent. We affirm.

FACTS

I. SUMMARY OF BACKGROUND FACTS

Michael Ames was a detective with the Pierce County Sheriff's Department (PCSD). He was a recurring government witness for the State in criminal prosecutions. The instant case arose when the PCPAO sent Ames a letter dated September 18, 2013 stating that several of Ames's "*Dalsing*" declarations and the "Coopersmith" report would be disclosed to defense counsel as potential impeachment evidence in the prosecution of *State v. George* and in any other case where Ames was expected to testify.[1] Ames disagreed that the *Dalsing* declarations and the Coopersmith report should be disclosed to defense counsel as potential impeachment evidence.

Ames filed this lawsuit, requesting a writ of prohibition to generally prohibit the PCPAO from disclosing these materials as potential impeachment evidence and an order declaring that his *Dalsing* declarations were truthful and not properly characterized as potential impeachment evidence under *Brady*.[2] Specifically, Ames requested the following relief:

> 5.1 A trial by jury of any factual disputes pursuant to RCW 7.24.090;
> 5.2 A writ of prohibition ordering defendant to cease and desist with any further communications that the materials identified in [the PCPAO's] letter of September 18th are impeachment evidence or potential impeachment evidence;
> 5.3 An order declaring the materials identified in [the PCPAO's] letter of September 18th are not impeachment evidence or potential impeachment evidence;
> 5.4 An award of attorney's fees and costs to Det. Ames under equitable theories to include good faith and fair dealing, or any other applicable statute or doctrine;

---

[1] *Dalsing v. Pierce County*, cause no. 12-2-08659-1, the Coopersmith report, and *State v George*, cause no. 05-1-00143-9, are discussed in detail below.

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

5.5  For such other and further relief as the court deems just and equitable.

Clerk's Papers (CP) at 10-11.

The trial court denied Ames's request for the writ of prohibition and for a declaratory judgment on a CR 12(b)(6) motion.  Ames appeals.

## A.  THE *DALSING* CASE

In December 2010, Lynn Dalsing was arrested and charged with several child pornography-related offenses.  Dalsing's attorney sought photographic and computer evidence that allegedly were the bases of the charges against Dalsing.  Ames was the PCSD's forensic computer examiner.  In June 2011, Ames e-mailed the lead detective on the *Dalsing* case that there was no evidence on any of the computers to link Dalsing to the crimes.  That same day, the lead detective forwarded Ames's opinion to Deputy Prosecuting Attorney Timothy Lewis, but the PCPAO did not disclose this exculpatory information until over a month later when the PCPAO dropped the charges and released Dalsing.

In March 2012, Dalsing filed a civil complaint against the County, claiming that the PCPAO's and the PCSD's actions amounted to false arrest and malicious prosecution.  In Dalsing's civil case, Ames filed four declarations to support his various motions for costs and attorney fees he incurred.  Ames had hired his own attorney during the Dalsing civil case because he believed that his interests, i.e., disclosing his involvement with the Dalsing criminal investigation and sending e-mails to the lead detective, conflicted with the County's interests in the civil case, such as denying misconduct from the PCPAO and avoiding liability.  In his declarations, Ames stated that (1) prior to his deposition in Dalsing's civil case, he did not know the PCPAO had never disclosed his e-mails to the lead detective to Dalsing, (2) he wanted to tell

3

the truth about the e-mails because the PCPAO's decision not to disclose them was "not in [Ames's] best interest," and (3) the deputy prosecutor told him not to answer Dalsing's deposition questions about the e-mails. CP at 546.

In response to Ames's motions for attorney fees and costs, Deputy Prosecutor James Richmond[3] declared that Ames's declarations contained "false assertions." CP at 577. Specifically, Richmond declared that contrary to Ames's declaration, at their October 2012 meeting, Ames did not give the e-mails at issue to Richmond; they did not discuss whether there were "supposedly 'exculpatory' e-mails or that Mr. Ames was aware of information that would be considered exculpatory"; and Richmond did not say that there was an "e-mail [that] would 'clear [Ames] of any wrong doing in the case'" or that Richmond would see that such e-mails were "'turned over as part of discovery.'" CP at 577. Richmond stated that Ames was not a party to the "numerous communications [exchanged] about plaintiff's discovery requests and Pierce County's objections and responses" and that when he met with Ames again in February 2013, contrary to Ames's declaration, they did not discuss or review county e-mails. CP at 577.

Regarding Ames's deposition, Richmond denied that Ames asked him (Richmond) about whether what happened in the deposition would have any repercussions for Ames or expressed concern about Richmond's advice not to answer questions. Richmond also denied that Ames ever expressed that he thought the County's assertion of work product protection of e-mails was erroneous or having been concerned that he was being prevented from clearing his name, the name

---

[3] Originally, Richmond was counsel for the County when Dalsing sued the County and advised Ames in that capacity. Later, Ames asserted that there was a conflict of interest and he retained independent counsel in the matter.

of the PCSD, or from testifying truthfully. Richmond also stated that contrary to Ames's declaration, Ames sought the advice of independent counsel two months before the deposition, not after the deposition.

### B. THE COOPERSMITH REPORT

Also in 2012, a student alleged that he had been bullied at a local school and that a teacher had participated in the bullying. The attorney who represented the student's parents had also represented Ames in a recent dispute with the PCSD. The attorney tried to contact the head of the PCSD's special assault unit but eventually contacted Ames, who went to the attorney's office to take a report from the parents. The head of the special assault unit investigated the bullying allegations and forwarded the results of her investigation to the PCPAO, who declined to prosecute.

The PCPAO released a long, detailed statement to the media explaining its decision and mentioning Ames's personal relationship with the attorney who "initiated" the investigation, though not naming Ames directly. Around the same time, the PCSD reviewed Ames's e-mails to see if he had any contact with the parents' attorney to determine whether Ames's involvement with the investigation presented a conflict. The PCSD found no suspicious e-mails.

Based on the PCPAO's "handling of the [school] Case," the PCPAO's press release, and the PCSD's search of his e-mails, Ames filed a complaint alleging retaliation and misconduct. CP at 450. That complaint was forwarded to the County's human resources department, who hired Jeffrey Coopersmith, an outside civil attorney, to conduct an independent investigation. Coopersmith's report found that there was "no merit" to Ames's retaliation allegations, that the

PCSD and the PCPAO handled the school bullying case properly, and that there is "no evidence that Det. Ames acted in anything other than good faith." CP at 485, 469.

## C. THE *GEORGE* CASE

In September 2013, the PCPAO sent Ames a letter explaining that it planned to disclose "potential impeachment evidence" regarding Ames in the *George* case. CP at 858. Specifically, the letter said that the PCPAO had four signed declarations from Ames regarding Dalsing that contained assertions that were disputed by Richmond, the deputy prosecuting attorney in that case in another signed declaration. The letter also said that the PCPAO had the Coopersmith report. The letter concluded by stating that the PCPAO intended to release Ames's and the prosecuting attorneys' declarations and the Coopersmith report to defense counsel as potential impeachment evidence in its prosecution of Dmarcus George.

The declarations, which included a signed statement by Richmond, were disclosed to George's attorney. The trial court had a hearing to discuss whether the PCPAO must disclose the Coopersmith report. The deputy prosecutor argued for an in camera review of the Coopersmith report to determine whether it was potential impeachment evidence, and Ames argued that a determination whether the report was potential impeachment evidence should be made by writ of prohibition and declaratory relief, but ultimately conceded that the report was likely discoverable as a public record.

## II. PROCEDURAL FACTS

In October 2013, Ames petitioned for a writ of prohibition seeking to prohibit the PCPAO from disclosing the *Dalsing* declarations and the Coopersmith report as potential impeachment evidence in future cases and a declaratory judgment that the declarations and report are not

potential impeachment evidence. The County moved to dismiss Ames's claims under CR 12(b)(6), arguing that (1) a writ of prohibition is improper where the PCPAO did not act outside or in excess of its jurisdiction, and (2) a declaratory judgment is improper because this dispute is not justiciable and a declaratory judgment would affect the interests of nonparties. The County also moved to strike under RCW 4.24.525 (the anti-strategic lawsuits against public participation (SLAPP) statute), which the trial court denied.

Ames argued that although the PCPAO has mandatory obligations to disclose potential impeachment evidence, it acts outside its role when it "generat[es] so called '*Brady*' material for the purposes of discrediting a witness." CP at 686. Ames also argued that based on case law from other jurisdictions and legal treatises, a declaratory judgment action is a proper proceeding for clearing his name; that such a claim is justiciable; and that, even if it were not justiciable, it presents an issue of major public importance.

The trial court granted the County's CR 12(b)(6) motion, concluding that (1) the PCPAO had jurisdiction to create the declarations in *Dalsing* and to disclose those declarations and the Coopersmith report as potential impeachment evidence, and (2) Ames's claim for a declaratory judgment is neither justiciable nor an issue of major public importance. The trial court also initially granted the County's motion for attorney fees and sanctions under CR 11, finding that Ames's claims were "baseless and frivolous" and not supported by a reasonable inquiry, which would have shown the absence of any controlling law. CP at 1203. After Ames moved for reconsideration, the trial court reversed its CR 11 sanctions order finding that Ames provided enough argument, case law from foreign jurisdictions, and law review articles to make a good faith argument for an extension of the law.

Ames appealed the trial court's CR 12(b)(6) dismissal and the County cross appealed the trial court's decision not to order CR 11 sanctions.

ANALYSIS

I. CR 12(B)(6) DISMISSAL ORDER

A. STANDARD OF REVIEW

We review a dismissal under CR 12(b)(6) de novo. *Worthington v. Westnet*, 182 Wn.2d 500, 506, 341 P.3d 995 (2015). CR 12(b)(6) motions should be granted only "'sparingly and with care'" and only when it is "beyond doubt" that the plaintiff can prove "no set of facts, consistent with the complaint, which would justify recovery." *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007) (quoting *Tenore v. AT & T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998)). We accept all facts in the plaintiff's complaint as true. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014). When reviewing the trial court's CR 12(b)(6) dismissal, we ask whether "there is not only an absence of facts set out in the complaint to support a claim of relief," but also whether there is any "hypothetical set of facts that could conceivably be raised by the complaint to support a legally sufficient claim." *Worthington*, 182 Wn.2d at 505.

B. WRIT OF PROHIBITION

Ames argues that a writ of prohibition is appropriate because the PCPAO does not have jurisdiction to knowingly disclose false information that it created in separate proceedings as *Brady*

evidence.[4]   The PCPAO has both jurisdiction and an ethical obligation to decide what potential

impeachment evidence is and to make *Brady* disclosures.   Thus, we hold that even if we assume

the content of those disclosures is false, the PCPAO has jurisdiction to make *Brady* disclosures

and a writ of prohibition is not appropriate.   Accordingly, CR 12(b)(6) dismissal was proper.

1.  RULES OF LAW

A "writ of prohibition . . . arrests the proceedings of any tribunal, corporation, board or

person, when such proceedings are without or in excess of the jurisdiction of such tribunal,

corporation, board or person."   RCW 7.16.290.   A writ of prohibition is a "drastic measure" that

may be granted only if the official is acting in the "'(1) [a]bsence or excess of jurisdiction, and

[there is an] (2) absence of a plain, speedy, and adequate remedy in the course of legal procedure.

The absence of either [condition] precludes the issuance of the writ.'"   *Skagit County Pub. Hosp.*

*Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1*, 177 Wn.2d 718, 722-23, 305 P.3d 1079

(2013) (first alteration in original) (quoting *Kreidler v. Eikenberry*, 111 Wn.2d 828, 838, 766 P.2d

438 (1989)).   The statutory writ of prohibition may be issued to "arrest" the improper exercise of

judicial, quasi-judicial, executive, and administrative power.   *Skagit County Pub. Hosp. Dist. No.*

---

[4] Ames argues repeatedly that he is entitled to a "name-clearing" hearing.  Br. of Appellant at 1.
A name-clearing hearing is part of the remedy he requests as part of his claims both for a writ of
prohibition and a declaratory judgment and is based on the case law from other jurisdictions that
have, in certain instances, given public employees the right to a "name-clearing hearing."  *See,*
*e.g.*, *Cotton v. Jackson*, 216 F.3d 1328, 1333 (11th Cir. 2000) ("If Plaintiff were without another
legal remedy and proved in a state mandamus proceeding that Defendants had deprived Plaintiff
of his federal liberty interest in his reputation without a hearing, then Plaintiff would have shown
that he had a clear legal right to a name-clearing hearing.").  A "name-clearing hearing" is not a
proceeding explicitly recognized in Washington law.  Because Ames does not demonstrate that he
is entitled to either a writ of prohibition or a declaratory judgment, we need not determine what
the proper remedy or proceeding on remand would be.

*304*, 177 Wn.2d at 722. It is not a proper remedy where the only allegation is that the actor is exercising jurisdiction in an erroneous manner. *See Brower v. Charles*, 82 Wn. App. 53, 57, 914 P.2d 1202 (1996).

In *County of Spokane v. Local No. 1553, American Federation of State, County & Municipal Employees, AFL-CIO*, Division Three of this court considered whether employees of the county prosecutor's office acted outside their "jurisdiction" when going on strike because a public employee strike is contrary to Washington law. 76 Wn. App. 765, 769, 888 P.2d 735 (1995). The court held that a strike was not necessarily outside the employees' jurisdiction just because it was unlawful. *Local No. 1553*, 76 Wn. App. at 769. Instead, historically, writs of prohibition apply where the officials' actions would encroach on the jurisdiction of others and "enlarge the powers of their positions." *Local No. 1553*, 76 Wn. App. at 769.

In *Brady v. Maryland*, the United States Supreme Court explained a prosecutor's disclosure obligations prior to a criminal trial. 373 U.S. 83, 86-87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The Court held that a prosecutor's decision not to disclose material "evidence favorable to an accused" violates that defendant's due process rights. *Brady*, 373 U.S. at 87. In the years after *Brady*, several cases expanded and clarified *Brady*'s reach. *See State v. Mullen*, 171 Wn.2d 881, 894, 259 P.3d 158 (2011). The Supreme Court extended the *Brady* rule to require the State to disclose impeachment evidence probative of witness credibility if that evidence is favorable to the accused. *Giglio v. United States*, 405 U.S. 150, 153-54, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); *United States v. Bagley*, 473 U.S. 667, 676-78, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).

The prosecutor is also obligated to disclose evidence in his or her possession and evidence in law enforcement's possession. *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed.

2d 490 (1995). If the prosecutor is unsure about whether certain evidence should be disclosed, he or she should err in favor of disclosure. *Kyles*, 514 U.S. at 439-40; *United States v. Agurs*, 427 U.S. 97, 108, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976) ("the prudent prosecutor will resolve doubtful questions in favor of disclosure"). The prosecutor is the only person who knows of undisclosed evidence and therefore is charged with the responsibility to gauge which evidence should be disclosed. *Kyles*, 514 U.S. at 437.

2. THE PROSECUTOR HAS JURISDICTION TO DISCLOSE POTENTIAL IMPEACHMENT EVIDENCE

Here, the PCPAO has jurisdiction to disclose potential impeachment evidence. Ames contends, however, that the PCPAO exceeded or acted outside of its jurisdiction when it disclosed the *Dalsing* declarations and the Coopersmith report because Ames's statements in those materials were truthful and Richmond's declaration was untruthful and created to discredit Ames. We disagree that the PCPAO exceeded or acted outside its jurisdiction when it determined the *Dalsing* declarations and the Coopersmith report constituted potential impeachment evidence.

(a) THE *DALSING* DECLARATIONS

Regarding the *Dalsing* declarations, Ames confuses the PCPAO's authority to file or make declarations to defend itself in a civil case with its separate and constitutional *Brady* obligation to disclose evidence to criminal defendants that might impeach potential witnesses. *Giglio*, 405 U.S. at 153-54. The PCPAO had jurisdiction to create declarations in *Dalsing* to defend against the allegations made by Ames in his motion for attorney fees. Therefore, the prosecuting attorney acts within his or her duties as an advocate for the State by creating an opposing declaration. The truth or falsity of that declaration was up to the trier of fact in *Dalsing*, and the truth or falsity of that declaration does not affect the prosecuting attorney's jurisdiction.

11

And even assuming, as we must when reviewing the trial court's CR 12(b)(6) dismissal, that Ames correctly alleges that Richmond's declaration was untruthful and was filed to discredit Ames, the PCPAO's *Brady* obligation to disclose potential impeachment evidence to future criminal defendants remains. *FutureSelect*, 180 Wn.2d at 962; *see also Kyles*, 514 U.S. at 439-40. The PCPAO's decision to disclose evidence under *Brady* is not a determination of credibility or truthfulness of a witness. Disclosure is only precautionary, with a final determination of credibility left to the specific fact finder in the case where the evidence may be considered.

Regardless of the truth of Ames's and Richmond's *Dalsing* declarations, the PCPAO's duty is to determine whether the defendant might consider those declarations to be probative of Ames's credibility as a witness. *Bagley*, 473 U.S. at 676. In fulfilling this duty, prosecutors must err on the side of disclosure. *Kyles*, 514 U.S. at 439-40. Therefore, Richmond's proper or improper intentions when filing his *Dalsing* declaration, and the truthfulness of Ames's and Richmond's declarations, are irrelevant. The issue here instead is whether a future defendant *might* use Ames's dispute with Richmond's and Ames's conduct during the *Dalsing* investigation to impeach Ames. The PCPAO has jurisdiction to decide whether to disclose Ames's and Richmond's *Dalsing* declarations to future defendants. Ames fails to show that the PCPAO has exceeded its jurisdiction and thus the drastic measure of a writ of prohibition is precluded.

(b) THE COOPERSMITH REPORT

The County's human resources department commissioned the Coopersmith report in response to Ames's allegations against top officials in the PCSD and the PCPAO. Although the Coopersmith report found no misconduct or bad faith from Ames, it also found that his claims had "no merit" and that it was not proper for Ames to take a police report in his official capacity from

his personal attorney. If the findings in the Coopersmith report call Ames's judgment into question, it is within the PCPAO's *jurisdiction*, as discussed above, to determine whether to disclose this report to future defendants as potential impeachment evidence.

Ames relies on whistleblower protections against retaliation for county employees to support his argument that the PCPAO acted outside or in excess of its jurisdiction. But whistleblower protections apply only when a retaliatory action is taken against the whistleblower. RCW 42.41.020(3); PCC 3.14.010(B).[5] A "retaliatory action" is

> (a) [a]ny adverse change in a local government employee's employment status, or the terms and conditions of employment including denial of adequate staff to perform duties, frequent staff changes, frequent and undesirable office changes, refusal to assign meaningful work, unwarranted and unsubstantiated letters of reprimand or unsatisfactory performance evaluations, demotion, transfer, reassignment, reduction in pay, denial of promotion, suspension, dismissal, or any other disciplinary action; or (b) hostile actions by another employee towards a local government employee that were encouraged by a supervisor or senior manager or official.

RCW 42.41.020(3).

Here, Ames's argument fails for three reasons. First, the possible disclosure to future defendants of the Coopersmith report as potential impeachment evidence is not a "retaliatory action" as defined under RCW 42.41.020(3) or PCC 3.14.010(B). Second, it is not clear that, in the Coopersmith report, Ames is even a whistleblower. And third, even if the disclosure of potential impeachment evidence to criminal defendants is a "retaliatory action," Ames offers no argument about whether that affects the PCPAO's jurisdiction. Again, that an official's act was unlawful does not inherently establish that the act was outside the official's jurisdiction. *Local*

---

[5] Local government whistleblower protection act. Ch. 42.41 RCW; Pierce County Code, ch 3.14, Whistleblower Protection.

*No. 1553*, 76 Wn. App. at 769. Future disclosure of the Coopersmith report as potentially impeaching evidence is, therefore, not outside or in excess of the PCPAO's jurisdiction.[6]

In conclusion, Ames points to no authority, and we know of none, for the proposition that a prosecutor acts in excess of or outside his or her jurisdiction when he or she discloses potential impeachment evidence even if known to be false, when created by the prosecutor to defend himself or herself in a separate civil suit. When witnesses change their stories or recant previous accounts, prosecutors must regularly disclose information, statements, or declarations to defendants under *Brady* that they know or believe to be false. Even if Richmond's declaration is false and an individual prosecutor lacks authority to create false declarations, it does not mean that the prosecutor acts without jurisdiction when he or she discloses those declarations to future defendants as potential impeachment evidence. *See Local No. 1553*, 76 Wn. App. at 769. Regardless of the truth of the *Dalsing* declarations, the PCPAO did not seek to "enlarge the powers of [its] position" because, according to *Brady* and its progeny, it is the PCPAO's exclusive duty to disclose *potential* impeachment evidence. *Local No. 1553*, 76 Wn. App. at 769; *Brady*, 373 U.S. at 86-87; *Giglio*, 405 U.S. at 153-54.

---

[6] The County argues repeatedly that Ames agreed to turn over the Coopersmith report to George. This argument is misleading. Ames agreed that the Coopersmith report was a public record and was likely available to George for that reason. But Ames also repeatedly and emphatically stressed that he did not want the trial court to rule on whether the Coopersmith report was potential impeachment evidence outside the context of Ames's petition for a writ of prohibition and declaratory judgment. Therefore, the County's contention that Ames somehow waived his argument that the Coopersmith report is potential impeachment evidence or agreed to characterize it as such is inaccurate.

Because Ames cannot demonstrate that the PCPAO acted outside or in excess of its jurisdiction when it determined whether to disclose the *Dalsing* declarations and the Coopersmith report, the dismissal of Ames's claim for a writ of prohibition was proper.[7]

### C. DECLARATORY JUDGMENT

Ames next argues that his claim is justiciable because he "presents an actual, immediate dispute in which [he] has a direct and substantial interest." Br. of Appellant at 24. We hold that Ames's claim is not justiciable because this dispute does not meet at least two of the four elements required to raise a justiciable controversy.

#### 1. RULES OF LAW

The Uniform Declaratory Judgments Act (UDJA)[8] gives "[c]ourts of record" the authority "to declare rights, status and other legal relations whether or not further relief is or could be claimed." RCW 7.24.010. However, a claim for relief under the UDJA exists only if there is a "'justiciable controversy'" or if the dispute pertains to "'issues of major public importance.'" *League of Educ. Voters v. State*, 176 Wn.2d 808, 816, 295 P.3d 743 (2013) (quoting *Nollette v. Christianson*, 115 Wn.2d 594, 598, 800 P.2d 359 (1990)).

A justiciable controversy requires proof of four elements:

---

[7] As to the second element to establish a claim of a writ of prohibition, Ames argues that the "[PCPAO] has not offered him any relief in any other forum." Br. of Appellant at 47. The County argues that Ames had an adequate legal remedy to prohibit the PCPAO from disclosing potential impeachment evidence because there was a hearing in the *George* case to determine whether the Coopersmith report should be disclosed. But neither party cites any relevant law in support of their arguments. Since Ames's claim for a writ of prohibition fails with the first element, we need not address this argument.

[8] Ch. 7.24 RCW.

"(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*League of Educ. Voters*, 176 Wn.2d at 816 (alteration in original) (quoting *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)). If any one of these four elements is lacking, the court's opinion in this case would be merely advisory, and Ames will have failed to raise a justiciable controversy. *Lewis County v. State*, 178 Wn. App. 431, 437, 315 P.3d 550 (2013), *review denied*, 180 Wn.2d 1010 (2014).

2. AMES'S CASE IS NOT JUSTICIABLE

(a) NO ACTUAL, PRESENT DISPUTE EXISTS

Ames argues that the record here "indisputably evidences adversarial proceedings." Br. of Appellant at 31. We disagree.

In *Diversified Industries Development Corp. v. Ripley*, the trial court granted a declaratory judgment to a lessor against his tenants and their insurers. 82 Wn.2d 811, 812, 514 P.2d 137 (1973). The lessor sought to determine who would be liable for injuries to the tenants' social guests on the premises. *Diversified Indus.*, 82 Wn.2d at 812. Our Supreme Court held that this dispute was not justiciable because a claim for financial responsibility was not yet "more discernible than an unpredictable contingency." *Diversified Indus.*, 82 Wn.2d at 815.

In *Walker v. Munro*, the court rejected a claim of justiciability where the dispute was over the impact of a statute not yet in effect. 124 Wn.2d 402, 412, 879 P.2d 920 (1994). There, citizen action groups sought a declaratory judgment that provisions of an initiative limiting expenditures, taxation, and fees were unconstitutional. *Walker*, 124 Wn.2d at 405. The Supreme Court held that

because most provisions of the initiative were not yet in effect and could still be amended, no actual harm was shown, and the dispute was "speculative" and "essentially political" such that it could only result in an improper advisory opinion. *Walker*, 124 Wn.2d at 412-13.

Here, Ames does not allege that the County has any current or future plans to call him as a witness and to disclose the potential impeachment evidence. Although he might be called to testify again, he has no current dispute with the County and the possibility that potential impeachment evidence may be disclosed in the future is merely an "unpredictable contingency." *Diversified Indus.*, 82 Wn.2d at 815. Importantly, Ames seeks to bind future and unidentified defendants by the declaratory judgment he seeks here. But there is no current dispute regarding the disclosure of the *Dalsing* declarations and the Coopersmith report that involves Ames and the County, much less the future defendants he hopes to bind. A claim for declaratory judgment that seeks to bind defendants that are not a party here must be rejected as merely advisory. Therefore, we conclude that there is no actual present or existing dispute.

(b) A JUDICIAL DETERMINATION WOULD NOT BE FINAL OR CONCLUSIVE

Ames appears to argue that a judicial determination could be a final judgment that the declarations and Coopersmith report are not potential impeachment evidence and should not be disclosed in future cases. Here, Ames's argument fails because he takes an overly narrow view of the PCPAO's *Brady* obligation.

Ames claims that if he secures a declaratory judgment that his declarations and the Coopersmith report were truthful, those materials will not be *Brady* evidence. But the PCPAO must disclose any potential impeachment evidence about witnesses whose testimony will be probative of the defendant's guilt or innocence. *Giglio*, 405 U.S. at 153-54. Whether Ames's

statements were truthful, therefore, is not the relevant question. Whether the evidence is actual impeachment evidence is also irrelevant. The deputy prosecutor and defense counsel in future cases must decide whether, assuming the deputy prosecutor should err on the side of disclosure, the declarations and Coopersmith report "*might* [be] used to impeach" Ames. *Bagley*, 473 U.S. at 676 (emphasis added). A declaratory judgment would not be final or conclusive because the future deputy prosecutor, defense counsel, and trial court will still have to determine whether the evidence at issue is potential impeachment evidence under the particular circumstances of that future case. *Kyles*, 514 U.S. at 437. Attempting to make that determination here would invade the rights of the parties in future ligation.

Because the absence of any of the justiciability elements defeats Ames's claim and here his claim does not meet at least two of the required elements, we hold that Ames's claim does not present a justiciable controversy.[9]

### D. THIS DISPUTE IS NOT AN ISSUE OF MAJOR PUBLIC IMPORTANCE

Alternatively, Ames argues that even if his claims do not present a justiciable dispute, he may invoke the UDJA because this dispute raises an issue of major public importance because the issues here "concern the integrity of the criminal justice system." Br. of Appellant at 33.[10]

---

[9] The County also argues that Ames's claim for declaratory judgment is procedurally defective because he failed to join all necessary parties who have an interest that would be affected by a declaratory judgment as required under RCW 7.24.110. Ames disagrees, arguing that future criminal defendants' rights are not implicated unless the declarations and the Coopersmith report are actually potential impeachment evidence. But since Ames and the County focus their arguments on whether this controversy is justiciable and the lack of justiciability defeats Ames's claims, we do not address the potential procedural defect.

[10] The dissent diverges from the majority opinion at this point in the analysis. The dissent agrees with Ames that this case presents an issue of major public importance and that the public interest would be enhanced by review of this case.

'"The presence of issues of broad overriding import may persuade a court to exercise its discretion in favor of reaching an issue which is otherwise not justiciable."' *Kitsap County v. Smith*, 143 Wn. App. 893, 908, 180 P.3d 834 (2008) (internal quotation marks omitted) (quoting *Snohomish County v. Anderson*, 124 Wn.2d 834, 840-41, 881 P.2d 240 (1994)).  In deciding whether an issue of major public importance exists, we must identify the public interest that the subject matter of the case presents and examine the "*extent to which* [that] *public interest would be enhanced by reviewing the case*."  *Anderson*, 124 Wn.2d at 841.  Courts should find that an issue of major public importance exists only rarely and where the public's interest is "overwhelming."  *Lewis County*, 178 Wn. App. at 440 (citing *To-Ro Trade Shows*, 144 Wn.2d at 416).  Washington courts have applied the major public importance exception in cases involving, for example, eligibility to stand for public office, freedom of choice in elections, the constitutionality of increasing excise taxes, and the statutory duty of the State to provide child welfare services.  *Wash. State Coal. for the Homeless v. Dep't. of Soc. & Health Servs.*, 133 Wn.2d 894, 917-918, 949 P.2d 1291 (1997).

Ames asserts and the dissent agrees that the public interest implicated here is the integrity of the criminal justice system.  We disagree and reject the notion that this case has the potential to impact the integrity of the criminal justice system such that the public's interest is overwhelming.  This case does not reach the level of overwhelming public interest that is involved in elections, public office, the constitutionality of excise taxes, and maintaining statutorily mandated child welfare services as established in other cases that have granted review under this exception.

The public interest here will not be enhanced by review of this case for several reasons: (1) the PCPAO's actions here were within its jurisdiction,[11] (2) we cannot and should not anticipate future defendants' use of the potentially impeaching evidence, and (3) Ames seeks to repair only his own credibility. Thus, Ames's claim that his dispute raises issues of major public importance is unpersuasive.

First, although the integrity of the criminal justice system in the County would be impacted if the PCPAO acted outside its jurisdiction here, as discussed above, the PCPAO's decision to release potentially impeaching evidence was within its jurisdiction. It is well settled that where a prosecutor is unsure whether evidence amounts to potential impeachment evidence or is exculpatory, the prosecutor should err on the side of disclosure. *Kyles*, 514 U.S. at 439-40; *Agurs*, 427 U.S. at 108.

Second, neither we nor the trial court can adequately anticipate all possible uses that future defendants might make of the potential impeachment evidence at issue here. And we are concerned that future defendants, those arguably most affected by a declaratory judgment here that the evidence is not potentially impeaching, are not party to this lawsuit and therefore are prevented from challenging the declaratory judgment ruling that might prevent disclosure of this evidence under *Brady* to future defendants. In our view, a declaratory judgment today regarding whether certain evidence is potentially impeaching evidence in future cases would damage rather than enhance the criminal justice system.

---

[11] The dissent takes issue with only the majority's decision regarding the declaratory judgment claim and does not dispute that the PCPAO acted within its jurisdiction.

Third, Ames primarily seeks to repair his own credibility. His prayer for relief requested (1) a jury trial to determine whether his or the deputy prosecutor's declarations were truthful, (2) a writ of prohibition ordering the PCPAO to cease and desist with any further communications that the materials at issue are impeachment evidence or potential impeachment evidence, (3) an order saying the materials are, in fact, not potential impeachment evidence, (4) attorney fees, and (5) any other just and equitable relief as determined by the court. Thus, Ames primarily seeks to clear his own name and to establish his declarations as truthful.

The public's interest in his declarations' truthfulness is certainly not overwhelming and will have little positive impact on the integrity of the criminal justice system as a whole. Even if we assume as the dissent asserts that the PCPAO here misused his powers to create the potentially impeaching evidence, such misuse in this case does not reach the level of broad public import as described in *Coalition for the Homeless*, 133 Wn.2d at 917. The issues presented in this appeal, in our view, simply do not rise to the level of broad public and overwhelming importance that would trigger the application of the exception to the general rule that courts do not review issues that are not justiciable.

Accordingly, because the integrity of the criminal justice system will not be enhanced by a review of the issues presented in this case, we hold that there is no issue of major public concern and the trial court properly dismissed Ames's declaratory judgment claim.[12] The integrity of the

---

[12] Ames also argues several other claims that he did not raise in his initial petition: that (1) he, as a public sector employee, is entitled to a "name-clearing" hearing as due process because he has a "constitutionally-based liberty interest" in his reputation, and (2) his free speech rights are implicated by the disclosure of his declarations and the Coopersmith report as potential impeachment evidence. Br. of Appellant at 34-35. However, because he did not raise these arguments as separate claims in his petition for review and does not argue them sufficiently here, we do not address them. RAP 10.3(a)(6).

criminal justice system is best served when the prosecutor fulfills its duties and obligations under *Brady* to disclose potentially impeaching evidence to defendants and their counsel. This tried and true approach allows the prosecution and the defense, on a case-by-case basis, to advocate to the trial court whether to admit the evidence as impeachment evidence.

## II. THE COUNTY'S CROSS APPEAL: CR 11 SANCTION

In its cross appeal, the County argues that the trial court abused its discretion when it granted Ames's motion for reconsideration of its CR 11 award of sanctions to the County because Ames's claims are frivolous.[13] We disagree.

## A. STANDARD OF REVIEW AND RULES OF LAW

We review a trial court's decision to award or deny sanctions under CR 11 for an abuse of discretion. *West v. Wash. Ass'n of County Officials*, 162 Wn. App. 120, 135, 252 P.3d 406 (2011); *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 903, 969 P.2d 64 (1998). A trial court abuses its discretion when its decision is based on untenable grounds or is manifestly unreasonable. *West*, 162 Wn. App. at 135.

CR 11 requires attorneys to make certain guarantees when they sign pleadings, motions, briefs, and legal memoranda. *Biggs v. Vail*, 124 Wn.2d 193, 196, 876 P.2d 448 (1994). Specifically, an attorney's signature is his or her certification that the pleading, brief, or motion is "(1) . . . well grounded in fact; [and] (2) . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law." CR

---

[13] The County also argues that (1) the trial court erred when it denied the County's special motion to strike under the anti-SLAPP statute, RCW 4.24.525(4), and (2) Ames failed to preserve his claim for fees and penalties under the anti-SLAPP statute. Both the County's and Ames's claims under the anti-SLAPP statute fail because our Supreme Court recently held that the anti-SLAPP statute is unconstitutional. *Davis v. Cox*, 183 Wn.2d 269, 295-96, 351 P.3d 862 (2015).

11(a). The rule is not meant to be a "fee shifting mechanism" or to "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories," but to curb abuses of the judicial system and to deter baseless filings. *Biggs*, 124 Wn.2d at 197; *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992).

A filing is "'baseless'" when it is "'(a) not well grounded in fact, or (b) not warranted by (i) existing law or (ii) a good faith argument for the alteration of existing law.'" *West*, 162 Wn. App. at 135 (internal quotation marks omitted) (quoting *MacDonald v. Korum Ford*, 80 Wn. App. 877, 883-84, 912 P.2d 1052 (1996)). A trial court may not impose CR 11 sanctions for a baseless filing unless it determines both that (1) the claim was without a factual or legal basis and (2) the attorney who signed the filing failed to perform a reasonable investigation into the claim's factual and legal basis. *West*, 162 Wn. App. at 135.

### B. AMES'S FILINGS NOT BASELESS

Ames's response to the County's CR 12(b)(6) motion demonstrates that his claims for a writ of prohibition and for a declaratory judgment were both made in good faith and after a consideration of and inquiry into relevant precedent. First, Ames began his response to the County's CR 12(b)(6) motion with citations to case law, arguing that a judgment on the pleadings is not appropriate because the decision to grant a writ of prohibition is a fact-specific inquiry. He continued with a lengthy explanation of the PCPAO's common law *Brady* obligation to disclose exculpatory evidence, including potential impeachment evidence. He argued that although the PCPAO may determine what constitutes potential impeachment evidence and whether the evidence should be disclosed under *Brady*, the PCPAO's "discretionary authority . . . does not equate to a jurisdictional power to create [potential impeachment evidence]." CP at 685. Ames

23

distinguished the cases the County cited, arguing instead that there is something fundamentally different about this case because the PCPAO created the potential impeachment evidence declarations to discredit Ames in *Dalsing* where the PCPAO's own misconduct was at issue.

The argument in Ames's CR 12(b)(6) response demonstrates that he considered case law relevant to writs of prohibition and the PCPAO's duty to make *Brady* disclosures specifically and made a good faith argument that his situation differed. Therefore, the trial court did not abuse its discretion when it concluded that Ames's legal research demonstrates that he performed a reasonable investigation into his claim for a writ of prohibition and that his claim was made in good faith.

Second, regarding Ames's claim for a name clearing by declaratory judgment, Ames argued in his response to the County's CR 12(b)(6) motion that "Washington does not have any specific case law on the use of a declaratory judgment action for purposes of name clearing; however, the theory is not novel." CP at 692. He then cited to the *Restatement (Second) of Torts Five* 27 Spec. Note (1977), one law review article, and two out-of-state cases that discuss "the propriety of a declaratory action for purposes of name clearing." CP at 693. The trial court found that "[t]he[se] articles and cases do not necessarily place the potential remedy into the context of Ames' [sic] case, but the fact that there are discussions in law review articles and case law makes the argument for the extension of such a remedy to this situation plausible." CP at 2069. The trial court also found that Ames's legal research suggests that his attorney made a reasonable investigation. This demonstrates that the trial court applied proper reasoning to the CR 11 sanctions question and that Ames's claim for a name clearing by declaratory judgment was not

baseless because he supported his good faith argument for an extension of existing law with a reasonable investigation into that argument's legal basis by providing legal research and analysis.

We hold that the trial court did not abuse its discretion when it granted Ames's motion for reconsideration and decided not to impose CR 11 sanctions because Ames's claims were made in good faith and after a reasonable inquiry into relevant case law.

### III. ATTORNEY FEES

The County requests attorney fees on appeal under RCW 4.24.525(6)(a) if it prevails on its anti-SLAPP issue and under RAP 18.9 because Ames's appeal is frivolous. We hold that the County is not entitled to attorney fees because the anti-SLAPP statute is unconstitutional and Ames's claims are not frivolous.

Affirmed.

JOHANSON, J.

I concur:

MELNICK, J.

BJORGEN, C.J. (dissenting) — Assuming that Michael Ames's declaratory judgment claims are not justiciable, those claims still raise issues of major public importance which demand resolution. Therefore, I would reverse the trial court's dismissal of Ames's petition for a declaratory judgment and remand for trial of that petition.

The majority opinion ably sets out the factual background of this appeal and the legal standards governing its resolution. Among those standards, threaded throughout the analysis are the rules governing dismissal under CR 12(b)(6). Dismissal under that rule should be granted only "'sparingly and with care'" and only when it is "beyond doubt" that the plaintiff can prove "no set of facts, consistent with the complaint, which would justify recovery." *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007) (quoting *Tenore v. A T & T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998)). To this end, we review dismissals under CR 12(b)(6) by asking whether there is any "hypothetical set of facts that could conceivably be raised by the complaint to support a legally sufficient claim." *Worthington v. Westnet*, 182 Wn.2d 500, 505, 341 P.3d 995 (2015).

Even without reaching into the hypothetical, the record before us is unmistakably an overture of interests more profound than those of the individual players. After Ames e-mailed the lead detective on the Lynn Dalsing case that there was no evidence on any of the computers linking Dalsing to the crimes the prosecutor had charged, the detective forwarded Ames's opinion to a deputy prosecuting attorney the same day. The prosecutor, however, did not disclose this exculpatory information until over a month later when the charges were dropped. The following year, Ames filed a number of declarations in Dalsing's subsequent suit against Pierce County. In those declarations, Ames stated, among other matters, that the prosecutor told

him not to answer Dalsing's deposition questions about the e-mails he had sent to the detective and that only at that time did Ames know those e-mails had not been disclosed. In response, the County filed a declaration by Pierce County Deputy Prosecutor James Richmond, declaring that Ames's declarations contained "false assertions made under oath" and setting out supporting details. Clerk's Papers (CP) at 576-82. Also, in a separate matter Ames filed a complaint with the County dated December 20, 2012, alleging retaliation and misconduct for its actions relating to the Coopersmith Report.

Then, in September 2013, the prosecutor notified Ames by letter that he planned to disclose four declarations by Ames in the Dalsing case, the Richmond declaration accusing Ames of making false accusations under oath, and the Coopersmith Report to defense counsel as evidence potentially impeaching Ames's credibility as a witness called by the State. The prosecutor's letter stated that he would make this disclosure in cases where Ames is expected to be called as a witness by the State. The next such case, the prosecutor stated, is its prosecution in *State v. George*.

Ames's petition for writ of prohibition and declaratory relief claims that these materials are not potential impeachment evidence that must be disclosed. Because the declaratory judgment action was dismissed under CR 12(b)(6), no judicial determination of the facts necessary to resolve this claim has occurred. The evidence we have before us, summarized here and in the majority opinion, would be consistent with a determination that the prosecutor acted entirely in good faith in keeping with his duty under *Brady v. Maryland*, 373 U.S. 83, 86-87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 153-54, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), to disclose potential impeachment evidence. The evidence

could also be consistent with the view that the disclosures were a misuse of the prosecutor's duties and authority in an attempt to retaliate against Ames for his actions in the Dalsing case.

Proof, though, is not the question before us. Instead, as shown, we must ask whether it is beyond doubt that Ames can prove no set of facts, consistent with the complaint, which would justify recovery. *San Juan County*, 160 Wn.2d at 164. We must ask whether there is any hypothetical set of facts that could conceivably be raised by the complaint to support a legally sufficient claim. *Worthington*, 182 Wn.2d at 505.

Given the context and timing of Ames's e-mails about the absence of evidence against Dalsing, his declarations in Dalsing's civil suit, Richmond's declaration accusing him of making false accusations under oath, and Ames's complaint for retaliation against the County, one cannot reasonably conclude that Ames can prove no set of facts, consistent with his petition, which would justify a conclusion that these disclosures did not include legitimate potential impeachment evidence. Especially where, as here, the documents that would be truly impeaching were prepared by the prosecutor's office, one may reasonably conceive of hypothetical circumstances under which these disclosures might not be compelled by the case law.

It must be stressed, and stressed again, that hypothesizing is a far distant exercise from determining the truth. In law, as in science, many hypotheses poorly correlate to the actual facts. A dismissal under CR 12(b)(6), though, prevents a party from developing the facts that may prove its case. A dismissal with that severe a consequence is allowed only when we can say, consistently with *San Juan County* and *Worthington*, that there is no reasonably conceivable set

28

of facts Ames could have proved that would entitle him to relief. Under the circumstances of this case, one may hypothesize such an array of facts.

That, though, does not end the inquiry. To conclude that dismissal of the claim for declaratory relief was improper under CR 12(b)(6), the hypothetical facts must either show that the claim was justiciable or that it falls within the exception for issues of major public importance. Assuming the majority is correct that the claim is not justiciable, one must ask whether a hypothetical set of facts, consistent with the petition, would show this to be an issue of major public importance.

As the majority points out, in deciding whether an issue is of major public importance, "courts examine not only the public interest which is represented by the subject matter of the challenged statute, but the *extent to which public interest would be enhanced by reviewing the case*." *Snohomish County v. Anderson*, 124 Wn.2d 834, 841, 881 P.2d 240 (1994) (emphasis in original). The Uniform Declaratory Judgments Act, chapter 7.24 RCW, is designed "'to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.'" *Osborn v. Grant County By & Through Grant County Comm'rs*, 130 Wn.2d 615, 631, 926 P.2d 911 (1996) (quoting RCW 7.24.120; *Clallam County Deputy Sheriff's Guild v. Bd. of Clallam County Comm'rs*, 92 Wn.2d 844, 848, 601 P.2d 943 (1979)). This rule of liberal construction will apply to determinations of major public importance.

The majority contends that the issues raised in this appeal are not of major public importance because, among other reasons, they only touch on Ames's attempt to clear his own name and to establish his credibility. Ames, without doubt, is attempting to clear his name and

29

repair his credibility. His petition for declaratory judgment, though, also raises claims that reach

far beyond any narrow, individual interest. For example, the petition claims that

> Defendant is motivated to wrongfully discredit Det. Ames because he has spoken out truthfully on matters that discredit Mark Lindquist and expose his office to liability.

CP at 7.

> Defendant is abusing its power and the judicial process to benefit itself and its officials and to mitigate against liability against the Prosecuting Attorney's Office.

CP at 7.

> Mark Lindquist has an apparent bias and prejudice against Det. Ames because he has spoken out against Mark Lindquist and his office and because he refuses to remain silent on matters of public concern that negatively impact the prosecutor's office even though he has been directed to do so by Mark Lindquist and his deputies.

CP at 7-8.

> Mark Lindquist is abusing the power of his office to retaliate against Detective Ames.

The Petition also characterizes the issue on declaratory judgment as

> whether Det. Ames has been truthful or whether the prosecuting attorney's office has been dishonest in characterizing the evidence and in its declarations and representations to the court.

CP at 9.

None of these claims have been proven. As shown above, however, that is not the

standard before us when reviewing dismissal under CR 12(b)(6). Instead, we ask whether it is

"beyond doubt" that the plaintiff can prove "no set of facts, consistent with the complaint, which

would justify recovery." *San Juan County*, 160 Wn.2d at 164. With the evidence before us, it is

certainly conceivable that Ames could prove additional facts consistent with his allegations of

governmental abuse.  Those allegations, if true, would directly contest the integrity of the criminal justice system and of an agency that administers it. Such issues rank high in any measure of public importance.  More to the point, the relief Ames requests is a declaration that the materials at issue are not potential impeachment evidence.  If he is able to prove his allegations, this relief would remove any misuse of the duty to disclose in this case and would discourage similar tactics in the future.  As such, the "*public interest would be enhanced by reviewing the case*," which is the heart of the standard set by *Snohomish County*, 124 Wn.2d at 841, for determining whether an issue is of major public importance.  (Emphasis in original.)

The majority also makes the critical points that the prosecutor is under a duty to disclose potential impeachment evidence, that the prosecutor should err on the side of disclosure if in doubt, and that no one can adequately anticipate all possible uses that future defendants might make of the potential impeachment evidence at issue here.  Before us, though, is a case where the principal evidence impeaching Ames was created by the prosecutor's office, where the sequence of events could suggest some adversity between Ames and the prosecutor's office, and where Ames's petition alleges various flaws in the prosecutor's development of the potential impeachment evidence.  These allegations call into question whether the information created and released by the prosecutor in fact is legitimate potential impeachment evidence.  If it is not, then the duty to disclose would likely not apply and future prosecutions would not be affected.

Against the backdrop of the evidence presented and the petition's allegations, there are reasonably conceivable sets of facts Ames could have proved that would have raised issues of

31

No. 45880-2-II

major public importance. With that, the petition for declaratory judgment should not have been

dismissed under CR 12(b)(6). For that reason, I dissent.

_____
BJORGEN, C.J.

32