[No. 39909-8-I. Division One. August 31, 1998.]

CHARLES KNOX, *Appellant*, v. MICROSOFT CORPORATION, *Respondent*.

*Jerry R. McNaul* and *Barbara H. Shuknecht* of *McNaul, Ebel, Nawrot, Helgren & Vana, P.L.L.C.*; *Kerry M. Regan*; and *Charles K. Wiggins*, for appellant.

*Thomas E. Kelly, Jr.*, and *Robin L. Nielsen* of *Preston Gates & Ellis*, for respondent.

WEBSTER, J. — A terminated employee sued the employer for breach of contract. The issue on appeal is whether the employee was entitled to seek money damages in his wrongful termination case for "lost" stock options, where the stock option agreements provided that if the employee was terminated, he would lose any unvested stock options and would be required to exercise any vested stock options within a certain time period. We conclude that the employee was entitled to pursue such damages. Accordingly, we reverse.

## FACTS

Appellant Charles Knox held a management position at Microsoft Corporation for approximately nine-and-one-half years. During those years, he was granted stock options on several occasions.[1] With each stock option grant, he signed an agreement which provided that if he was terminated, any unvested options would be canceled, and any vested options had to be exercised within 90 days for the options granted under the 1981 Stock Option Plan, and within three months for the options granted under the 1991 Stock Option Plan.

Knox was terminated in January 1995. Apparently, he exercised his vested options within the specified time periods, and Microsoft canceled his unvested options. Knox subsequently sued Microsoft for wrongful termination, claiming breach of an employment contract. Microsoft maintained the position that Knox had an "at will" employment relationship with the company, while Knox attempted to show that Microsoft's handbooks, policies, and practices revealed a relationship that could be terminated only for

---

[1]The record shows that he was granted stock options on eight separate occasions, under both the 1981 Stock Option Plan and the 1991 Stock Option Plan.

cause or only through certain internal procedures. The jury returned a verdict in Knox's favor, awarding him $650,000 in damages.[2]

However, the trial court had previously granted Microsoft two summary judgment motions which precluded the jury from awarding any damages for the unvested stock options that were canceled, and for the "early exercise" of the vested stock options.[3] Knox appeals these summary judgment orders, and also appeals the final judgment insofar as it precluded such damages.[4]

## DISCUSSION
### A. Damages for Breach of Employment Contract

A trial court's grant of summary judgment is reviewed de novo. *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993). Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989); *see* CR 56(c), (e).

The only question presented here is the measure of damages Knox was entitled to seek in his wrongful termination case. General contract principles apply, as Knox's wrongful termination action was based on a breach of employment contract theory. *See Kloss v. Honeywell, Inc.*, 77 Wn. App. 294, 298, 890 P.2d 480 (1995) ("Employ-

---

[2]The record does not show any special verdict forms, so it is unclear how the jury arrived at that figure. The jury was permitted to award damages for "[t]he reasonable value of lost past earnings and benefits," as well as "[t]he reasonable value of lost future earnings and benefits" caused by wrongful termination. CP 1095.

[3]But it appears that the jury was permitted to award damages for any *future* stock options that were lost as a result of the termination. *See* CP 1060, 1095; *see also* Appellant's Opening Br. at 14 n.6, 15.

[4]Microsoft urges this court to dismiss the appeal on the basis that the Judgment on Verdict and the April 29, 1996 Order were not properly appealed. As discussed below, we decline to do so.

ment contracts are governed by the same rules as other contracts."); *see generally* HENRY H. PERRITT, JR., 1 EMPLOYEE DISMISSAL LAW AND PRACTICE §§ 4.1, 4.62 (3d ed. 1992). As such, back pay is a " ' "make whole" remedy,' intended to return the claimant to the financial position he would have been in had the initial unlawful firing (or, in this case, breach of contract) not occurred." *Kloss*, 77 Wn. App. at 303; *see Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 849, 792 P.2d 142 (1990) ("Contract damages are ordinarily based on the injured party's expectation interest and are intended to give that party the benefit of the bargain by awarding him or her a sum of money that will, to the extent possible, put the injured party in as good a position as that party would have been in had the contract been performed."); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 347 (1981); *Local 2750, Lumber & Sawmill Workers Union v. Cole*, 663 F.2d 983, 987 (9th Cir. 1981).

In fact, our Supreme Court has reaffirmed the venerable *Hadley v. Baxendale* doctrine in the context of a wrongful termination case:

> All authorities agree the seminal case defining contract damages is *Hadley v. Baxendale*, 9 Ex. 341, 354, 156 Eng. Rep. 145, 151 (1854) in which the court stated that damages recoverable for a breach of contract are those which "may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

*Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 445-46, 815 P.2d 1362 (1991) (discussing whether or not emotional distress damages were recoverable for breach of an employment contract). In short, the general measure of damages for breach of contract—which is applicable to employment contract cases—is that the injured party is entitled (1) to recovery of all damages that accrue naturally from the breach, and (2) to be put into as good a position pecuniarily as he would have been had the contract been

performed. *Diedrick v. School Dist. No. 81*, 87 Wn.2d 598, 609-10, 555 P.2d 825 (1976).

Knox contends that a wrongfully terminated employee is entitled to seek damages for any cancellation or early exercise of stock options resulting from the termination. Microsoft does not dispute this premise. That is, Microsoft does *not* dispute that "lost" stock options are generally recoverable as damages in breach of employment contract cases.[5] Rather, Microsoft contends that Knox's stock option agreements bar any such recovery, arguing that to allow such damages would render the option agreements unenforceable.

Knox signed stock option agreements under both the 1981 Stock Option Plan and the 1991 Stock Option Plan. Agreements made under the 1981 Plan provided, in relevant part:

2. This option shall expire at the earliest of the following:

. . . .

(b) Ninety (90) days after voluntary or involuntary termination of Optionee's employment other than [discharge for misconduct, willfully or wantonly harmful to the Company]

. . . .

3. In the event of Optionee's termination of employment . . . the options to purchase Option Shares which have yet to vest pursuant to Section 1(a) above shall lapse as of the date of termination, death or disability.[6]

7. This is not an employment contract and while the benefits, if any, of this option are an incident of the Optionee's employment with the Company, the terms and conditions of such employment are otherwise wholly independent hereof . . . .

---

[5] In fact, as noted above, it appears that Knox was permitted to seek damages for any *future (not yet granted)* stock options he lost as a result of the wrongful termination. Furthermore, Microsoft does not contend that an award of money damages for Knox's "lost" stock options would be too speculative for calculation.

[6] In two of the later stock option agreements made under the 1981 Stock Option Plan, this clause further provided: "In consideration of the grant made hereunder, the optionee agrees that upon and following termination of employment for any reason, any unvested options shall be deemed to have a value of zero dollars ($0.00)." CP 745, 749.

*See, e.g.*, CP 729, 731. Agreements made under the 1991 Plan contained similar language:

> 4. *Termination of Optionee's Status as an Employee.* In the event of termination of Optionee's Continuous Status as an Employee (as such term is defined in the 1991 Stock Option Plan (the "Plan")),[7] Optionee may exercise this option to the extent exercisable on the date of termination. Such exercise must occur within three (3) months after the date of such termination (but in no event later than the date of expiration of the term of this option as set forth in Section 3 above). To the extent that Optionee does not exercise this option within the time specified in this Section 4, this option shall terminate.
>
> 8. *Value of Unvested Options.* In consideration of the grant of this option, Optionee agrees that upon and following termination of Optionee's Continuous Status as an Employee for any reason, any unvested portion of this option shall be deemed to have a value of zero dollars ($0.00).
>
> 11. *No Employment Right.* Nothing in this option or the Plan shall confer upon Optionee any right with respect to continuation of employment with the Company, nor shall it interfere in any way with Optionee's right or the Company's right to terminate the employment relationship at any time, with or without cause . . . .

*See, e.g.*, CP 210, 212, 213.

Microsoft points to the above language to argue that the option agreements "contemplated" Knox's termination. Indeed, it is undisputed that these agreements created certain obligations in the event of Knox's termination. But it is also undisputed that Knox complied with these requirements—neither party has claimed breach of the stock option agreements. That is, Knox does not seek "reinstatement" of the options. He does not challenge Microsoft's

---

[7]The amended 1991 Stock Option Plan defines "continuous status as an employee" to mean "the absence of any interruption or termination of service as an Employee. Continuous Status as an Employee shall not be considered interrupted in the case of sick leave, maternity leave, infant care leave, medical emergency leave, military leave, or any other leave of absence authorized in writing by a Vice President of the Company prior to its commencement." CP 325.

actions in canceling his unvested options or requiring the early exercise of vested options, pursuant to the agreements. In other words, Knox does not challenge the terms of the stock option agreements, and Microsoft's "enforceability" arguments are misplaced.

Attempting to address Knox's "benefit of the bargain" discussion, Microsoft further contends that because there was no breach of the individual stock option agreements, Knox has received "the benefit of the bargain" of the option agreements. But it cannot be emphasized enough in this case that Knox has not claimed any breach of the option agreements—he does not contend that he has not received the benefit of his bargain for the stock options. Hence, any such discussion bears no relevance on the issue of damages for breach of Knox's employment contract.

Put another way, Knox does not dispute that the terms of the option agreements govern the cancellation and early exercise of his options—he is simply seeking the money damages he incurred *from* the cancellation and early exercise of the options, which naturally flowed from Microsoft's breach of his employment contract. As Knox contends, such recovery is necessary to return him to the financial position he would have been in had the initial wrongful termination not occurred. *See Kloss*, 77 Wn. App. at 303; *Diedrick*, 87 Wn.2d at 609-10.

In sum, Microsoft has provided no relevant argument or authority supporting its position that the stock option agreements bar recovery for damages arising from the cancellation and early exercise of Knox's options in his wrongful termination case.[8] As such, Microsoft has not demonstrated entitlement to judgment as a matter of law

---

[8]It appears that Microsoft is, *in effect*, asking this court to construe or interpret the terms of the stock option agreements as a "limitation on damages" or "limitation on remedies" provision for Microsoft's breach of Knox's *employment* contract. But Microsoft has not actually attempted to show, or even assert, that the terms of the option agreements contain a "limitation on damages" clause for breach of Knox's employment contract. Thus, if Microsoft indeed maintains this position, we decline to consider the issue, as Microsoft has not briefed it. *See Bohn v. Cody*, 119 Wn.2d 357, 368, 832 P.2d 71 (1992) (an argument will not be considered if inadequately briefed). At most, Microsoft vaguely states that the terms of the op-

on this issue. We reverse the summary judgment orders and remand for further proceedings.

## B. Dismissal of Appeal

### 1. *Procedural Background*

The trial court's March 14, 1996 order seemingly granted Microsoft's summary judgment motion precluding damages for "lost" stock options, but yet permitted further briefing on the matter: "[T]he court grants Microsoft's motion to preclude recovery by Plaintiff for lost stock options. Plaintiffs may provide the court briefing on recovery for lost stock options under benefit of bargain' theory." CP 1022. There was some confusion about the impact of this ruling. Knox subsequently submitted further briefing on the issue, after which the trial court entered its April 29, 1996 order, which provided:

> THE COURT HEREBY GRANTS Microsoft's *motion for summary judgment on any claim arising out of the written stock option agreements entered into between the Plaintiff and Microsoft prior to the termination of his employment for damages for the value of unvested stock options and for the early exercise of vested options, including any claim that Plaintiff is entitled to such stock options damages as a 'benefit of the bargain' of any express or implied employment agreement.*

CP 1059-1060.

Final judgment on the verdict was filed on November 13, 1996. Knox filed his notice of appeal to this court on December 9, 1996. He specifically appealed the March 14 order and referred to the Final Judgment, but he failed to reference the April 29 order:

> CHARLES E. KNOX, plaintiff, seeks review by the designated appellate court of the trial court's order on Microsoft's Summary Judgment Motion, which was entered in this action on

---

tion agreements demonstrate that the parties "contemplat[ed] employment termination." Resp't Br. at 23. However, as discussed in the text, it is undisputed that Knox's stock options *were* cancelled and exercised early upon his termination, as required under the option agreements.

March 14, 1996, to the extent that order precluded recovery by plaintiff of damages for lost stock options. The final judgment in this action was entered on November 13, 1996.

CP 1068.

### 2. *Final Judgment*

Microsoft "renews" its motion to dismiss for Knox's failure to designate the Final Judgment in its notice of appeal. However, this court has already twice denied Microsoft's motion to dismiss on this basis. A Commissioner of this court found that while Knox's notice of appeal did not specifically state that he seeks review of the Final Judgment, the notice sufficiently complies with RAP 5.3(a). A panel of this court subsequently denied Microsoft's motion to modify the Commissioner's ruling. We likewise deny Microsoft's "renewed" motion with respect to the Final Judgment.

### 3. *April 29, 1996 Order*

■ Microsoft also moves to dismiss review of the April 29 order on the basis that it was not actually appealed in accordance with RAP 5.2(a). However, such a request ignores RAP 1.2(a), which provides:

> These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in rule 18.8(b).

In addition, our Supreme Court has stated that appellate courts should normally exercise its discretion to consider cases and issues on their merits unless there are compelling reasons not to do so—even despite technical flaws in an appellant's compliance with the Rules of Appellate Procedure. *State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995). We deny Microsoft's motion to either dismiss the appeal or to preclude review of the April 29 order.

We reverse the March 14, 1996 and April 29, 1996 sum-

mary judgment orders and the Final Judgment to the extent that they preclude recovery for damages arising from (1) the cancellation of Knox's granted but unvested stock options, and (2) the early exercise of his vested stock options.

We remand for further proceedings.

GROSSE and BAKER, JJ., concur.

Review denied at 137 Wn.2d 1022 (1999).