# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WESLEY R. HANNIGAN, | No. 48501-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| VIT NOVAK and ZDENKA NOVAK, husband and wife, | |
| Appellants. | |

MAXA, A.C.J. – Vit and Zdenka Novak (collectively "Novak") appeal from the trial court's judgment in favor of their neighbor Wesley Hannigan in Hannigan's suit to quiet title and for ejectment. After a bench trial, the trial court quieted title to a 20-foot easement running through Novak's property for the benefit of Hannigan and ejected Novak from the easement.

We hold that (1) substantial evidence supported the trial court's ruling that a 20-foot easement existed for Hannigan's ingress and egress and that Novak blocked the easement, and (2) Novak's myriad other arguments alleging procedural errors are without merit. However, we hold that the trial court erred in awarding Hannigan attorney fees.

Accordingly, we affirm the trial court's judgment in favor of Hannigan except for the trial court's award of attorney fees to Hannigan, which we reverse.

FACTS

*The Properties*

Novak and Hannigan live on neighboring lots in the Maple View Acres subdivision in Washougal. Hannigan purchased his property (lot 8) in 1992. Novak purchased his property (lot

9) in 1993. Both properties are at the end of Wildlife Drive. Novak's lot runs south of the road and continues past the end of the road to the west. Hannigan's lot is north of both the end of the road and the portion of Novak's lot that extends to the west of the road.

Novak's real estate contract described three different easements (referred to by the parties as the 20-foot, 30-foot, and 60-foot easements) encumbering lot 9. The contract specifically described the 20-foot easement, stating that the lot was subject to a "20 foot non-exclusive easement for ingress, egress, and utilities." Clerk's Papers (CP) at 30.

The 20-foot easement extends to the northwest from the end of Wildlife Drive, across a small corner of Novak's lot. Hannigan built a gravel driveway along the 20-foot easement to allow him to drive between his lot and Wildlife Drive.

*Turnaround Construction*

In 2007, the fire department informed Hannigan that Wildlife Drive did not contain a turnaround large enough for their equipment, which could potentially affect the fire department's ability to fight fires in the neighborhood. The neighborhood roadway association decided that a turnaround needed to be built at the end of Wildlife Drive that could accommodate the fire department's equipment. Hannigan and Novak disagreed about what kind of turnaround to build and whether it should be built entirely within the 60-foot easement on Novak's lot or partially on Hannigan's lot.

In 2010, Novak began building what he thought would be the best turnaround. In the course of construction, Novak created various berms that blocked the 20-foot easement Hannigan used to access his lot.

2

*Disorderly Conduct Charge*

On June 28, 2010, Hannigan used a bulldozer and attempted to smooth over the berms that were blocking his access to the 20-foot easement. Novak and Hannigan yelled at one another, and Hannigan allegedly threatened Novak with the bulldozer. Novak called the police, who cited Hannigan for disorderly conduct.

On September 9, Hannigan entered a stipulated motion and order for stay of proceedings and stipulation to facts on the disorderly conduct charge. Hannigan stipulated "to the admissibility of the facts contained in the police reports upon which the charge" of disorderly conduct was based. CP at 385. The record is unclear how the charge was resolved, but Hannigan was not convicted.

*The Present Case*

On September 10, Hannigan filed suit against Novak seeking to (1) quiet title to the easement, (2) eject Novak from the easement, and (3) recover damages for costs related to repairing the easement. In his complaint Hannigan alleges, among other things, that Novak tampered with survey markers after Hannigan hired a surveyor to mark the easements. Hannigan also stated that Novak's grading of the soil blocked the 20-foot easement and made it impossible for Hannigan to access his property with his motor home.

Although Novak initially had counsel, he eventually represented himself. He took various positions throughout the case, including alleging defects in Hannigan's service of filings; filing a CR 11 motion seeking sanctions against Hannigan for bringing a frivolous lawsuit; alleging ex parte communication between the judge and Hannigan's attorney; and objecting to action taken by the court in setting the case for trial.

Novak took particular issue with the allegations that he tampered with the survey markers. And he repeatedly referenced Hannigan's citation for disorderly conduct – arguing that Hannigan committed perjury by contradicting information from the disorderly conduct police report and arguing that Hannigan could not prevail because that would mean a criminal profited from his crime.

*Trial and Judgment*

During a bench trial, Hannigan testified and also presented testimony from Greg Brown, the land surveyor he called to mark the easements after Novak began his construction of the turnaround, as well as Aaron Erickson, a contractor who looked at the property to estimate the cost of restoring the easement. Novak testified and also presented testimony from a witness who could confirm that Novak was out of town when someone allegedly tampered with the survey markers.

The trial court ruled that Hannigan was entitled to free and unobstructed use of the 20-foot, 30-foot, and 60-foot easements on Novak's property and ordered Novak to cease interfering with the easements and to pay the costs to restore the easements to their earlier condition. The trial court entered extensive findings of fact and conclusions of law.

The amended judgment and order, which was entered after the trial court received documentation of Hannigan's actual costs, imposed a monetary judgment totaling $43,008.97 against Novak. The judgment included $29,176.86 in attorney fees. The trial court did not state a legal basis for the award of attorney fees.

Novak appeals the trial court's ruling, various procedural issues, and the trial court's award of attorney fees.

ANALYSIS

A.    TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

Novak assigns error to the trial court's judgment and order and its denial of his response to Hannigan's proposed findings of fact and conclusions of law. Because Novak makes arguments about certain findings of fact and conclusions of law, we interpret Novak's arguments as a challenge to those findings and conclusions. We reject Novak's arguments.

1.    Standard of Review

We review a trial court's decision following a bench trial by asking whether substantial evidence supports the trial court's findings of fact and whether those findings support the trial court's conclusions of law. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). Substantial evidence is the quantum of evidence sufficient to persuade a rational, fair-minded person that the premise is true. *Id.* We treat unchallenged findings of fact as verities on appeal. *Kitsap County v. Kitsap Rifle & Revolver Club*, 184 Wn. App. 252, 267, 337 P.3d 328 (2014), *review denied,* 183 Wn.2d 1008 (2015).

2.    Existence of the 20-foot Easement

Novak argues that substantial evidence did not support the trial court's conclusion of law that Hannigan had a 20-foot easement on Novak's property. We disagree.

Easements are interests in land and therefore must be conveyed by a deed complying with the statute of frauds. RCW 64.04.010; *Gold Creek N. Ltd. P'ship v. Gold Creek Umbrella Ass'n*, 143 Wn. App. 191, 200-01, 177 P.3d 201 (2008). Deeds must be (1) in writing, (2) signed by the party to be bound, and (3) acknowledged. RCW 64.04.020. No particular words are necessary to constitute a grant of easement. *McPhaden v. Scott*, 95 Wn. App. 431, 435, 975 P.2d 1033

(1999). The grant must clearly show the intention to give an easement and be sufficiently definite. *Beebe v. Swerda,* 58 Wn. App. 375, 379, 793 P.2d 442 (1990).

Here, the necessary elements to create an easement were present. Novak's real estate contract was in writing, signed by him, and acknowledged. The contract stated that the lot was subject to a "20 foot non-exclusive easement for ingress, egress, and utilities." CP at 30. The easement is described in metes and bounds and specifically references lot 8 (Hannigan's property). Further, Novak testified at trial that he read the contract and understood it to mean that the estate was burdened with a 20-foot easement.

Novak emphasizes that there is no mention of the 20-foot easement in Hannigan's deed. He argues that the plaintiff in an ejectment can recover only on the strength of his own title, citing *Seymour v. Dufur*, 53 Wash. 646, 650, 102 P. 756 (1909). But *Seymour* is distinguishable because in that case parties had a chain of title showing that they were the true owners of the property at issue. *Id.* at 647-48. Here, there is no dispute over chain of title. And Novak cites no other authority for the proposition that the beneficiary of an easement cannot rely on the deed of the servient estate in establishing a lawful easement.

Accordingly, we hold that the trial court did not err in finding that Novak's property was subject to a 20-foot easement.

3.    Blocking the 20-foot Easement

Novak argues that the trial court erred in finding that he blocked Hannigan's access to the road along the 20-foot easement because the officer who wrote the police report in the disorderly conduct case stated that he did not have difficulty driving through the area in his patrol car. However, sufficient evidence presented at trial supported the trial court's finding of fact.

Erickson testified that when he visited the area the week before trial there was a berm taller than him that blocked access to Hannigan's property. Brown testified that in August of 2010 he observed a berm around four to five feet high blocking access to the 20-foot easement. And Hannigan testified that he struggled to drive his motor home over the 20-foot easement because of berms and submitted photographs of the state of the easement that showed the berms blocking access. The testimony and photographs provided substantial evidence that Novak's construction activity created berms that prevented Hannigan from accessing his property.

4. Existence of the 30-foot and 60-foot Easements

Novak does not dispute that the 30-foot and 60-foot easements exist, but argues that Hannigan's "violent criminal activity" voids them. Br. of Appellant at 34. Because Novak does not challenge any of the trial court's findings in this regard, we need not address this argument.[1]

B. CRIMINAL CASE RECORDS

Novak argues that the court clerk and deputy prosecuting attorney obstructed justice by hiding from his attorney Hannigan's stipulation in his disorderly conduct case. We hold that Novak's allegations of obstruction are irrelevant in this appeal.

First, whether the court clerk and deputy prosecuting attorney withheld Hannigan's stipulation is a matter outside of the record before this court. We cannot consider matters outside the record. *See In re Dependency of H.S.*, 188 Wn. App. 654, 663, 356 P.3d 202 (2015).

Second, Novak alleges that the court clerk and deputy prosecuting attorney withheld evidence, not Hannigan. So even if his allegations are true, they are irrelevant in this appeal

---

[1] Novak also seems to argue that the trial court erred in finding that Novak tampered with the survey markers. But because the trial court made no such finding, we do not address that argument.

because they do not implicate Hannigan. Accordingly, we hold that Novak is not entitled to relief on this issue.

C.     FAILURE TO SERVE STATUS REPORT

Novak argues that the trial court lost jurisdiction when Hannigan failed to serve Novak with a copy of the status report Hannigan filed with the clerk's office in response to the clerk's CR 41(b)(2)(A) notice of dismissal for failure to prosecute. We hold that Hannigan improperly failed to serve the status report on Novak, but disagree that the lack of service affected jurisdiction or prejudiced Novak.

CR 41(b)(2)(A)[2] provides:

> In all civil cases in which no action of record has occurred during the previous 12 months, the clerk of the superior court shall notify the attorneys of record by mail that the court will dismiss the case for want of prosecution unless, within 30 days following the mailing of such notice, a party takes action of record or files a status report with the court indicating the reason for inactivity and projecting future activity and a case completion date. If the court does not receive such a status report, it shall, on motion of the clerk, dismiss the case without prejudice and without cost to any party.

Under this rule, the court clerk sent the parties a notice of dismissal for failure to prosecute on March 28, 2013. Hannigan filed a declaration of Wesley R. Hannigan regarding status report in response, but did not serve Novak with that declaration.

CR 5 outlines the requirements of service on opposing parties. CR 5(a) states that "every order required by its terms to be served, every pleading subsequent to the original complaint . . . ,

---

[2] CR 41 has been amended since the events of this case transpired, but the language is materially the same. Accordingly, we do not use "former" before CR 41. This is also the case with CR 5 and CR 60, discussed later in this opinion.

every paper relating to discovery . . . , and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served."

Hannigan argues that he was not required to serve Novak with the CR 41(b)(2)(A) status report because such a status report is not a document listed in CR 5(a). Hannigan reads CR 5(a) too narrowly. CR 41(b)(2)(A) requires a party to file the status report with the court, and Hannigan's declaration included the case caption and was filed with the court. Therefore, it arguably constitutes a "pleading" for purposes of CR 5(a). Further, a status report may constitute a "written notice" under CR 5(a). Therefore, we hold that Hannigan violated CR 5(a) by not serving his CR 41(b)(2)(A) status report on Novak.

But there is no legal authority to support Novak's assertion that a failure to serve results in loss of jurisdiction for the trial court. Further, Novak cannot show that he was prejudiced by Hannigan's failure to serve. Hannigan's status report complied with CR 41(b)(2)(A), which meant that the case could not be dismissed under that rule. Therefore, Novak would have had no ability to "oppose" the status report even if he had received notice.

Accordingly, we hold that the trial court did not err in proceeding with the case despite Hannigan's failure to serve Novak with a copy of the status report.

D. DENIAL OF NOVAK'S CR 11 MOTION

Novak filed a motion for CR 11 sanctions, arguing that Hannigan's suit was frivolous because (1) Hannigan could not win the case because it would constitute profiting from his earlier crime of disorderly conduct, (2) Novak had proof that he was out of town and could not have tampered with the survey markers, (3) Novak had successfully argued for the lifting of an

ex parte temporary restraining order that Hannigan obtained, and (4) Hannigan's CR 41(b)(2)(A) status report was not served or signed by an attorney.

Novak argues that the trial court erred by failing to strike Hannigan's response to Novak's motion for CR 11 sanctions because Hannigan failed to serve a copy of the response on Novak; Hannigan engaged in ex parte communications with the trial court because his response to Novak's motion for CR 11 sanctions included a handwritten cover sheet; and the trial court erred in denying the CR 11 motion. We hold that Novak was not prejudiced by Hannigan's failure to serve his response, there was no ex parte communication, and the trial court did not err in denying the CR 11 motion.

1.    Appealability

Initially, Hannigan argues that the trial court's denial of Novak's CR 11 motion is not an appealable decision because (1) it is not a final judgment under RAP 2.2 and (2) Novak failed to designate the CR 11 ruling in his notice of appeal as required by RAP 2.4. We disagree.

Hannigan's first argument reflects a misunderstanding of RAP 2.2. Under RAP 2.2(a), only final judgments are appealable. *In re Estate of Jones*, 170 Wn. App. 594, 605, 287 P.3d 610 (2012). But once a final judgment is entered, all of the trial court's actions in that case become appealable. *See Herrmann v. Cissna*, 82 Wn.2d 1, 3-4, 507 P.2d 144 (1973) (noting that trial court rulings that do not dismiss causes of action are not appealable until after the final judgment). A trial court's ruling on a motion for CR 11 sanctions is an appealable decision. *See Eller v. E. Sprague Motors & R.V.'s, Inc.*, 159 Wn. App. 180, 189-91, 244 P.3d 447 (2010).

Regarding Hannigan's second argument, RAP 2.4(a) provides that we "will, at the instance of the appellant, review the decision or parts of the decision designated in the notice of

appeal." However, RAP 18.8(a) provides that we "may, on [our] own initiative or on motion of a party, waive or alter the provisions of any of these rules . . . in order to serve the ends of justice." And RAP 1.2(a) provides that the rules "will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances."

Courts have relied on RAP 1.2(a) and 18.8(a) when forgiving an appellant's failure to strictly comply with RAP 2.4(a) by including all decisions in the notice of appeal. *See In re Truancy of Perkins*, 93 Wn. App. 590, 594, 969 P.2d 1101 (1999) (allowing review of contempt orders that were not included in the notice of appeal); *Knox v. Microsoft Corp.*, 92 Wn. App. 204, 213, 962 P.2d 839 (1998) (allowing review of summary judgment despite appellant's failure to designate the final judgment in his notice of appeal). An appellate court normally should exercise its discretion to consider cases and issues on their merits despite technical flaws in compliance with the rules of appellate procedure, unless there are compelling reasons not to do so. *Knox*, 92 Wn. App. at 213.

Here, Novak's notice of appeal contains only the amended order and judgment. It does not include the trial court's orders related to Novak's CR 11 motions. But Novak clearly assigned error to the trial court's rulings on the CR 11 motions and he argues the issue in his brief. Further, Hannigan responded to Novak's arguments. Therefore, Hannigan was aware that Novak appealed the CR 11 motion. Accordingly, we exercise our discretion under RAP 1.2(a) and 18.8(a) to overlook Novak's failure to include the CR 11 orders in his notice of appeal and resolve the issue on its merits.

11

2.      Failure to Serve Response

Novak filed a CR 11 motion for sanctions on April 8, 2015.  Hannigan e-mailed his response to Novak, but did not otherwise serve him.  Novak objected based on lack of service.

Hannigan argues that he was not required to serve the response on Novak under CR 5(a).  This argument is misguided.  CR 5(a) states that a party must serve all pleadings.  A response to a CR 11 motion obviously is a pleading for purposes of CR 5(a).  And absent an agreement by the parties, e-mailing a pleading to the opposing party does not constitute proper service.  CR 5(b)(7); GR 30(b)(4).  Novak did not agree to service by e-mail.  Therefore, Hannigan violated CR 5(a) by failing to serve his CR 11 response on Novak.

However, Novak cannot show that he was prejudiced.  Novak did receive a copy of the response by e-mail before the hearing.  Further, as discussed below, Hannigan's response had no impact on the trial court's ruling denying CR 11 sanctions because that decision was based entirely on the inadequacy of Novak's motion.  Accordingly, we hold that Novak was not prejudiced by Hannigan's failure to serve his response to the CR 11 motion.

3.      Ex Parte Communication

Novak alleges that at the motion hearing, Hannigan hand delivered a copy of the response to the trial court and included a handwritten note stating, "Thank you for your kind attention in this matter.  If you have any questions, please do not hesitate to contact me."  Br. of Appellant at 44.  Novak argues that this conduct constituted ex parte communication between Hannigan and the trial court.

However, Novak has no evidence that Hannigan submitted a handwritten note or what the note said.  And according to Novak's allegations, he was present when Hannigan's attorney gave

the trial court the note. In any event, the contents of the alleged note were innocuous. Accordingly, we hold that the trial court did not err by engaging in ex parte communications with Hannigan's attorney.

### 4. Denial of CR 11 Sanctions

Novak argues that the trial court erred by denying his motion for CR 11 sanctions. We disagree.

CR 11(a) requires that an attorney sign every pleading, motion, and legal memorandum submitted to the court to certify that it is (1) well grounded in fact, (2) warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, (3) not interposed for an improper purpose, and (4) the denials of factual contentions are warranted on the evidence or reasonably based on a lack of information or belief.

We review a trial court's decision to award or deny sanctions under CR 11 for an abuse of discretion. *Ames v. Pierce County*, 194 Wn. App. 93, 120, 374 P.3d 228 (2016), *review denied*, No. 93428-2 (Wash. Dec. 7, 2016). A trial court abuses its discretion when its decision is based on untenable grounds or is manifestly unreasonable. *Id.*

Here, none of Novak's grounds support a conclusion that Hannigan's filing was baseless, not warranted by law, or that it had absolutely no chance of success. Hannigan sued to quiet title to the easement and eject Novak from the easement. Hannigan's filing alleged facts supporting his legally cognizable claims – that Novak had placed berms on the road across the 20-foot easement when he was constructing his turnaround.

Regarding Hannigan's attorney's failure to sign the CR 41(b)(2)(A) status report, Hannigan submitted a declaration that he signed under penalty of perjury. His attorney did not

sign the declaration. Novak does not provide authority indicating that Hannigan's declaration was a pleading, motion, or legal memorandum that his attorney had to sign for CR 11 purposes.

But even if the declaration did require Hannigan's attorney's signature, the attorney's failure to sign the declaration would not result in sanctions. CR 11(a)(4) provides that "[i]f a pleading, motion, or legal memorandum is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant." The remedy for a failure to sign is not sanctions. Sanctions may only be awarded by the trial court when a "pleading, motion, or legal memorandum *is signed* in violation of [CR 11]." CR 11(a)(4) (emphasis added). Therefore, the trial court could not have awarded Novak sanctions on the basis of Hannigan's attorney's failure to sign Hannigan's declaration.[3]

Because Novak did not meet his burden to justify CR 11 sanctions, the trial court did not abuse its discretion in denying Novak's motion. Accordingly, we affirm the trial court's denial of Novak's CR 11 motion.

E.      ER 904 OBJECTIONS

Novak argues that the trial court erred by denying his pretrial objections to Hannigan's ER 904 notice. He argues that the trial court did not properly consider his objections and that the evidence should have been stricken. We disagree.

ER 904 is designed to expedite the admission of certain types of reliable documentary evidence. *Hernandez v. Stender*, 182 Wn. App. 52, 58, 358 P.3d 1169 (2014). The rule provides

---

[3] Novak alleges that Hannigan's attorney's paralegal engaged in the unauthorized practice of law by signing the status report. This argument is without merit. The paralegal faxed the status report to the court and submitted a signed affidavit as required under GR 17(a)(2) indicating that the she examined the document for completeness and legibility.

that certain documents shall be deemed admissible if they are properly proposed under the rule. ER 904(a). The party seeking to admit ER 904 evidence must provide notice to the opposing party no less than 30 days before trial. ER 904(b). The opposing party then has 14 days from the time of notice to raise any objections to the proposed ER 904 evidence. ER 904(c).

Hannigan filed an ER 904 notice regarding numerous photographs and documents. Novak provided timely objections and the trial court heard arguments from Novak about his objections. The trial court discussed the objections with the parties and decided that all objections could be handled during the bench trial at the time of admission. The trial court stated that it was not admitting the ER 904 evidence at that time.

The trial court did not fail to consider Novak's ER 904 objections, overrule the objections, or rule that the ER 904 evidence should be admitted. The record shows that the trial court considered Novak's objections and decided that they were all objections that could be made during trial. Instead, the trial court simply deferred the issue for trial. Accordingly, we hold that the trial court did not err regarding Novak's ER 904 objections.

F.      NOVAK'S RESPONSE TO HANNIGAN'S NOTICE TO SET FOR TRIAL

Novak argues that the trial court erred in denying his response to Hannigan's notice to set the case for trial. We disagree.

On May 11, 2015 Hannigan filed a notice to set for trial. On May 18, Novak filed defendant's response to notice to set for trial in which he made various arguments. The trial court discussed the motion with the parties and asked Novak why he thought the case could not be set for trial. Novak indicated that the parties had not conducted discovery or had an

evidentiary hearing. When the trial court asked Novak if he could be ready for trial by August 2015, Novak said he could be ready. The trial court then scheduled the trial for August.

Because Novak consented to an August 2015 trial date, he waived his ability to appeal the trial court's decision to set the case for trial. *See Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 774-75, 320 P.3d 77 (2013) (stating that the invited error doctrine applies when a party takes affirmative and voluntary action inducing the trial court to take the action that the party challenges on appeal). Accordingly, we hold that the trial court did not err by setting the case for trial.

G.    DENIAL OF NOVAK'S RIGHT TO PRESENT WITNESSES

Novak argues that the trial court denied his right to present witnesses. We disagree.

The record shows that Novak was permitted to call Jeff Weissert as a witness. The purpose of Weissert's testimony was to establish that Novak was out of town on the day that Hannigan alleged he tampered with the survey markers. Shortly after Weissert took the stand, the trial court made a factual finding that Novak did not tamper with the survey markers. Because Weissert's testimony no longer was necessary, the trial court excused him.

The record clearly shows that Novak was able to and did present Weissert as a witness, but his testimony became unnecessary when the trial court ruled in Novak's favor on the subject of that testimony. Accordingly, we hold that the trial court did not deny Novak's right to present witnesses.

H.    ALLEGED PERJURY BY HANNIGAN

Novak argues that the trial court erred by allowing Hannigan to commit perjury. We disagree.

Novak argues that Hannigan committed perjury when he answered three of Novak's interrogatories. The responses to which Novak takes issue state that (1) investigation suggested Novak was responsible for tampering with the survey markers, (2) Hannigan did not assault Novak or any of Novak's family on Novak's property, and (3) Hannigan did not trespass on Novak's property. Novak argues that these statements constituted perjury because Novak was out of town when the survey markers were tampered with and because Hannigan's stipulation from the disorderly conduct case established that Hannigan assaulted Novak and trespassed on Novak's property.

There are numerous problems with Novak's claim. First, it is not the trial court's responsibility to prevent perjury. Novak's claim that the trial court erred by allowing Hannigan to commit perjury is unwarranted because the trial court could not have known whether Hannigan's interrogatory responses were knowingly false. Second, the appropriate avenue for relief from a judgment obtained by perjury would be to make a motion in the trial court under CR 60(b)(4). We generally cannot overturn a judgment on the basis that it was obtained by perjury. Third, there is no evidence that Hannigan actually committed perjury. The responses to which Novak takes issue were not material to the questions of whether Hannigan had an easement and whether Novak interfered with the easement. And Hannigan did not stipulate to assault or trespass in the disorderly conduct case. He simply stipulated that the police report was admissible. Accordingly, we reject Novak's argument.

I.    DENIAL OF NOVAK'S MOTION TO PROVE JURISDICTION

Novak argues that the trial court erred when it denied his motion to prove jurisdiction. We disagree.

17

No. 48501-0-II

On November 30, 2015, Novak filed a motion to prove jurisdiction in which he argued that the trial court lost jurisdiction when it failed to enter a judgment and order within 90 days of the trial as required by RCW 2.08.240. The trial court denied his motion. Novak asks this court to find that the trial court erred in denying his motion and that the trial court's judgment is null and void because it was entered without jurisdiction.

RCW 2.08.240 states "Every case submitted to a judge of a superior court for his or her decision shall be decided by him or her within ninety days from the submission thereof . . . and upon willful failure of any such judge so to do, he or she shall be deemed to have forfeited his or her office." But the mere fact that the judgment was not rendered within 90 days does not constitute error upon which the judgment may be reversed. *West v. Thurston County*, 168 Wn. App. 162, 193, 275 P.3d 1200 (2012).

Here, the trial court did submit a decision within 90 days. The trial court issued an oral ruling at the close of the bench trial. RCW 2.08.240 does not require that a written judgment be entered within 90 days. In any event, Novak's request that we find the trial court's judgment null and void on the basis of lack of jurisdiction is not supported by the law because violation of RCW 2.08.240 does not result in loss of jurisdiction or require reversal.

Accordingly, we hold that the trial court did not err in denying Novak's motion to prove jurisdiction.

J.     TRIAL COURT'S ALLEGED LYING ABOUT RECORDS

Novak argues the trial court clerk obstructed justice by lying to him when he inquired whether Hannigan had made any new filings between December 21 and December 29, 2015. We disagree.

18

Novak argues that on December 29 he called and e-mailed the clerk's office to inquire

whether Hannigan had made any new filings and was told there were no new filings when in fact

Hannigan had filed a motion for order to show cause on contempt and a motion to supplement

the findings and judgment. What the clerk told Novak about the motions is not in the trial court

record,[4] and therefore we decline to consider this argument. *See H.S.*, 188 Wn. App. at 663.

In addition, whether the clerk failed to tell Novak about Hannigan's two motions is not

relevant to any appealable decision. The trial court ultimately denied both of the motions and

Novak does not appeal those decisions. Further, Novak was not prejudiced by the alleged

incorrect response from the clerk's office – he filed responses to the motions.

Accordingly, we hold that the trial court did not err by allegedly lying about court

records.

K.      AMENDED JUDGMENT AND ORDER

Novak argues that the trial court erred in entering the amended judgment and order and

denying Novak's response to Hannigan's motion to supplement findings of fact and conclusions

of law. We disagree.

Novak argues that the amended judgment and order was improper because it was entered

by the trial court more than 10 days after entry of judgment in violation of CR 52(b). CR 52(b)

provides that a party may file a motion to amend findings or make additional findings within 10

days of the entry of judgment. The trial court entered its written judgment and order on

---

[4] Novak attaches an e-mail correspondence with the clerk's office to his opening brief. But he did not submit this document to the trial court.

December 3, 2015 and Hannigan filed his motion to supplement the judgment and order on December 21.

However, when the trial court made its oral ruling at the conclusion of the bench trial, it reserved the issue of survey fees. At that time the trial court stated, "The cost of surveying – I forgot that goes in . . . Submit a bill. We'll look it over." Report of Proceedings (RP) at 245. Later, when the trial court entered its written judgment it said "The Partial Judgment and Order is asking for costs of restoring the easement . . . I'm signing that Partial Judgment. There may be more to come." RP at 251. And the written judgment and order included a note by the trial court that it was "[s]ubject to modification after cost of survey arrives." CP at 418.

Hannigan's motion to supplement the judgment included a request to supplement the money judgment to include $8,833.11 in surveying costs as supported by submitted billings. Because in its initial ruling the trial court had reserved the issue of the amount of survey costs and asked for Hannigan to submit billings, it accepted Hannigan's request to supplement the judgment by adding the survey cost amount.

Therefore, the trial court did not amend the judgment based on a late motion to supplement. The trial court simply completed its initial ruling after receiving the requested bills to show the amount of survey costs. Accordingly, we hold that the trial court did not err in entering the amended judgment and order.

L.    TRIAL COURT ATTORNEY FEES

Novak argues that the trial court erred by awarding Hannigan attorney fees. The trial court awarded attorney fees to Hannigan, but did not state a legal basis for the award in its oral ruling, conclusions of law, or judgment. Hannigan argues that the award of attorney fees is

20

authorized by (1) RCW 4.24.630, (2) Novak's bad faith, or (3) RCW 7.28.083(3). We agree with Novak.

A court may award attorney fees for costs of litigation only when such an award is authorized by contract, statute, or recognized ground of equity. *Union Bank, NA v. Blanchard*, 194 Wn. App. 340, 364, 378 P.3d 191 (2016). We review the award of attorney fees de novo and review the amount of attorney fees for abuse of discretion. *Gunn v. Riely*, 185 Wn. App. 517, 532, 344 P.3d 1225, *review denied,* 183 Wn.2d 1004 (2015).

First, Hannigan argues that attorney fees are recoverable under RCW 4.24.630(1). RCW 4.24.630 provides:

> (1) *Every person who goes onto the land of another* and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury. . . . In addition, the person is liable for reimbursing the injured party for the party's reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs.

(Emphasis added.)

This statute establishes liability for three types of conduct: (1) removing valuable property from the land, (2) wrongfully causing waste or injury to the land, or (3) wrongfully injuring personal property or real estate improvements on the land. *Clipse v. Michels Pipeline Constr., Inc.*, 154 Wn. App. 573, 577-78, 225 P.3d 492 (2010). If the injured party shows that one of the three types of conduct occurred, the court can order the liable party to pay the injured party's attorney fees.

However, RCW 4.24.630(1) only imposes liability on a person who "goes onto the land of another." In this case, Novak did not go onto the land of another because Hannigan's

easements ran through Novak's own property. Novak may have interfered with Hannigan's easement, but an easement is not "land of another." Instead, "[a]n easement is a nonpossessory right *to use another's land* in some way without compensation." *Maier v. Giske*, 154 Wn. App. 6, 15, 223 P.3d 1265 (2010) (emphasis added). Although Hannigan had a right to use Novak's land, the land was Novak's and not Hannigan's. Therefore, we hold that RCW 4.24.630 does not support the trial court's award of attorney fees.

Second, Hannigan argues that attorney fees are recoverable because Novak acted in bad faith. Courts have recognized the losing party's bad faith as an equitable ground upon which attorney fees may be awarded. However, awarding attorney fees based on this equitable ground requires the trial court to actually find bad faith on the part of the losing party. *See In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 267, 961 P.2d 343 (1998); *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 798, 557 P.2d 342 (1976) ("This exception does not apply to the present case as the trial court did not find any bad faith conduct on the part of respondent.").

Here, the trial court entered conclusions of law about Novak's questionable conduct during litigation, and concluded that Hannigan was required to expend additional funds for attorney fees because of this conduct. One of the conclusions was that Novak "has used spurious and judicially uncognizable filings to require [Hannigan] to spend more money on attorney and court costs, and will likely continue to do so in future litigation." CP at 416. These conclusions of law could be interpreted as a finding of bad faith.

However, the trial court did not make any express findings of fact or conclusions of law that Novak acted in bad faith. And the trial court never ruled orally or in writing that it was

awarding attorney fees based on a finding of bad faith. Therefore, we hold that Novak's bad faith does not support the trial court's award of attorney fees.

Third, Hannigan argues that attorney fees are recoverable under RCW 7.28.083(3). This statute applies to actions "asserting title to real property by adverse possession." RCW 7.28.083(3). Hannigan argues that RCW 7.28.083(3) should apply because prescriptive easements are analogous to adverse possession. However, the trial court found that Hannigan had an express easement, not a prescriptive easement. Therefore, we hold that RCW 7.28.083(3) is inapplicable and does not support the trial court's award of attorney fees.

The trial court did not identify the basis for its award of attorney fees to Hannigan. And Hannigan's assertion that the fees are supported by either RCW 4.24.630, Novak's bad faith, or RCW 7.28.083(3) is unfounded. Accordingly, we hold that the trial court erred by awarding Hannigan attorney fees and reverse the attorney fee award.

M. APPELLATE ATTORNEY FEES

Hannigan argues that if he is the prevailing party on appeal he is entitled to attorney fees under RCW 4.24.630, based on Novak's bad faith, or under RCW 7.28.083(3). However, for the reasons given above, neither RCW 4.24.630 nor RCW 7.28.083(3) support an award of attorney fees in this case. And Hannigan has not shown that Novak has acted in bad faith in this appeal. Accordingly, we decline to award Hannigan attorney fees on appeal.

CONCLUSION

We affirm the trial court's judgment in favor of Hannigan except for the trial court's award of attorney fees to Hannigan, which we reverse.

No. 48501-0-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_MAXA, A.C.J._____
MAXA, A.C.J.

We concur:

_JOHANSON, J._____
JOHANSON, J.

_MELNICK, J._____
MELNICK, J.