IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MORGAN AIKEN III,<br><br>　　　　Appellant,<br><br>　　v.<br><br>ROCIO SANCHEZ and MARTHA BECERRA,<br><br>　　　　Respondents. | No. 84115-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — After noise complaints were made against him, Morgan Aiken sued another tenant and the resident manager of his apartment complex for civil conspiracy, violations of the Residential Landlord-Tenant Act (RLTA), breach of the implied covenant of quiet use and enjoyment, and other claims. The court granted the defendants' motions to dismiss and sanctioned Aiken for filing a frivolous lawsuit, as well as under CR 11. It also awarded his fellow tenant damages under RCW 4.24.510, the "anti-SLAPP statute."[1]

Aiken appeals the trial court's orders denying his motions to amend or supplement his complaint, to compel answers to interrogatories, and to delay the hearing on the motions to dismiss until after the close of discovery. He also appeals the court's orders dismissing his claims and awarding attorney fees and

---

[1] SLAPP is an acronym for "Strategic lawsuits against public participation." RCW 4.24.510 (notes).

anti-SLAPP damages against him. We reverse the anti-SLAPP damages, but otherwise, we affirm.

FACTS

Aiken and Martha Becerra[2] lived next door to each other at the same apartment complex. Their apartment complex's resident manager, Rocio Sanchez, called Aiken in December 2020 and told him about complaints that he was banging on the wall and "engag[ing] in loud sexual intercourse." According to Aiken, Sanchez then placed written notice of these complaints on his door in January 2021. Aiken believed Becerra had made the complaints because Sanchez told him the person who complained "has a five year old son," and only Becerra had a young son and lived near Aiken. After Aiken called Sanchez and told her there was no woman in his apartment and denied banging on the wall, the apartment complex took no further action about the noise complaints.

Nonetheless, Aiken began a "daily log" of sounds he heard from his apartment that he kept for about ten days. The first evening's entries included "banging on the walls," "various conversations," and "snoring." After receiving two such e-mails, Sanchez thanked Aiken but told him his "daily report is nonsensical" and he should report only nuisance behavior "as per your lease."

In February 2021, Becerra called the police to complain about Aiken's noise. An officer responded but determined the noise was not coming from Aiken's apartment. Later that month, Aiken filed, pro se, a suit against the

---

[2] In her declaration below, this defendant self-identified as Martha Becerra Murillo, stated that her name is spelled incorrectly in the case caption as "Marta Beceria," and signed the declaration as "Martha Becerra." We have corrected the caption on appeal and refer to her herein as Becerra.

apartment complex, Sky Garden Park Villa, and Sanchez. Those defendants filed a motion to dismiss, and Aiken responded with a motion to withdraw his complaint. The court dismissed that complaint without prejudice.

According to Becerra, in early July 2021, Aiken had her car towed using an authorization from his old lease, before the parking spot was reassigned from him to her. She also alleged that in August 2021, her car broke down and the mechanic who repaired it told her that a number of bolts had been removed from the radiator where it connected to the fan. The radiator also had a hole in it that looked like it had been made purposefully. Becerra believed it was Aiken who damaged her car, based on his other conduct toward her and his access to her vehicle.

On July 12, 2021, Aiken filed this lawsuit pro se against Sanchez and Becerra for breach of the covenant of quiet enjoyment, violations of the RTLA,[3] and criminal harassment. Becerra claims Aiken's lawsuit was a part of a pattern of harassment against her, including damaging her car, and following, monitoring, and surveilling her. Aiken then filed numerous documents, causing the case docket to grow to more than 200 entries. Among those entries were seven motions in early 2022 either to amend or supplement his complaint.

On January 19, 2022, Sanchez filed a motion to dismiss and for sanctions under both CR 11 and RCW 4.84.185. On March 4, Becerra filed a motion to dismiss and for sanctions, including damages under the anti-SLAPP statute, RCW 4.24.510. On March 10, Aiken moved to compel Sanchez to answer his

---

[3] Ch. 59.18 RCW.

interrogatories, and he moved to "delay [the] hearing until after [the] discover[y] period ends."

In April 2022, the court heard oral argument. The court granted both Sanchez's and Becerra's motions to dismiss. It also granted both their requests for sanctions, and it granted anti-SLAPP damages to Becerra. The court entered orders denying Aiken's multiple motions to amend or supplement his complaint, denying Aiken's motion to compel Sanchez to answer his interrogatories, and denying his motion to delay the hearing until after the close of discovery.

Aiken timely appeals all of the court's orders. Only Sanchez filed a brief in response; Becerra did not.

DISCUSSION

Aiken assigns error to the court's denial of his motions to amend, compel, and delay and to the orders granting Sanchez's and Becerra's separate motions to dismiss his claims with prejudice. He also challenges the sanctions the court imposed on him and the anti-SLAPP damages it awarded to Becerra. Respondent Sanchez requests sanctions against Aiken and his appellate counsel for filing this appeal.

I.    Motions to Amend Complaint, Compel Discovery, and Delay

As an initial matter, Aiken assigns error to the court's orders denying his motions to amend or supplement his complaint, to compel, and to delay. We conclude the court did not abuse its discretion in denying these motions.

Aiken assigns error to the court's April 28 order denying his motions to amend or supplement his complaint. We review a trial court's denial of a motion

4

to amend pleadings for abuse of discretion. Del Guzzi Constr. Co., Inc. v. Glob. Nw., Ltd., Inc., 105 Wn.2d 878, 888, 719 P.2d 120 (1986). Under CR 15, a plaintiff may amend his complaint "once as a matter of course at any time before a responsive pleading is served." After a responsive pleading, such as an answer, is filed, a plaintiff may amend his complaint "only by leave of [the] court or by written consent of the adverse party." CR 15(a). "[L]eave shall be freely given when justice so requires." CR 15(a). However, a trial court may consider whether the new claim is futile. Colvin v. Inslee, 195 Wn.2d 879, 901, 467 P.3d 953 (2020). And a trial court appropriately denies a motion to amend if an amended claim is duplicative or futile. Nakata v. Blue Bird, Inc., 146 Wn. App. 267, 278, 191 P.3d 900 (2008). A trial court does not abuse its discretion by denying a motion to amend where the proposed amended complaint contained "the same basic claims, based upon the same basic facts." Larson v. Snohomish County, 20 Wn. App. 2d 243, 286, 499 P.3d 957 (2021) ("The gravamen of the . . . argument was, once again, that [superior] court lacked subject matter jurisdiction.").

Aiken filed four amendments that he either subsequently struck or that the court denied based on "procedural deficiencies." After Sanchez filed her motion to dismiss, Aiken filed three more motions either to amend or "supplement."

Aiken's July 2021 complaint includes claims of breach of the implied covenant of quiet use and enjoyment, violation of the RLTA, and harassment and threats, citing criminal statutes, RCW 9A.46.060 and .020. His proposed amendment dated February 25, 2022, added Sky Garden Park Villa and

5

Westland Associates as defendants and stated six claims: civil conspiracy, breach of the covenant of quiet enjoyment, breach of contract, "Intent to Commit an Unlawful Eviction," outrage, and breach of fiduciary duties. His proposed amendment dated March 1 asked the court to "disregard all previous Amendments . . . as this document supersedes them," and stated that he was filing the motion to add defendants Sky Garden Park Villa and Westland Associates and "raise new issues," identifying the same six claims as in his February 25 proposed amendment. The March 1 amendment also purported to "correct the misuse of criminal laws." Aiken's proposed amendment dated March 10 "address[ed] events which . . . arose after the complaint was filed" and added a new defendant, Ileana Garzon, whom he alleged removed his payment plan from his tenant record.

The court denied Aiken's "three current overlapping" motions to amend, and concluded the proposed amendments were futile "because they are not justified by the factual record." Its written order incorporated the court's oral ruling that denied Aiken's motions as "moot" because the complaint "fails to state any recognizable claim for any viable remedy."

On appeal, Aiken argues that adding Sky Garden Park Villa and Westland Associates as parties was not futile because they were liable for Sanchez's actions.[4] Further, Aiken claims his retaliation claim against Sanchez was not futile because it was based on her actions after he filed his lawsuit in July 2021. Despite concluding that the amendments were futile, in deciding Sanchez's and

---

[4] On appeal, Aiken does not address the attempted addition of Garzon as a defendant.

6

Becerra's motions to dismiss, the court nevertheless "considered all the materials that have been filed," including Aiken's "overlapping" amendments. Thus, we conclude the court did not abuse its discretion by denying his motions to amend.

Next, Aiken assigns error to the court's order denying his motions to compel Sanchez to answer his interrogatories. Aiken also appeals the denial of his motion "to Delay Hearing Until After Discover[y] Period Ends,"[5] which, on appeal, he characterizes as a motion for a continuance under CR 56(f).

We review an order denying a motion to compel discovery for an abuse of discretion. Barfield v. City of Seattle, 100 Wn.2d 878, 887, 676 P.2d 438 (1984). We also review a trial court's denial of a motion for a continuance for an abuse of discretion. Qwest Corp. v. City of Bellevue, 161 Wn.2d 353, 369, 166 P.3d 667 (2007), abrogated on other grounds by Cost Mgmt. Servs., Inc. v. City of Lakewood, 178 Wn.2d 635, 310 P.3d 804 (2013). A court abuses its discretion when the discretion exercised is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." Barfield, 100 Wn.2d at 887 (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Under CR 56(f), a court may grant a continuance to a party opposing summary judgment if, "for reasons stated," the party cannot present by affidavit facts essential to its opposition to the motion. A trial court may deny a motion for a continuance when (1) the requesting party does not have a good reason for the delay in obtaining the evidence; (2) the requesting party does not indicate what evidence would be established by further discovery; or (3) the new evidence

---

[5] At the hearing, Aiken also asked the court to "reschedule" the hearing because Sanchez was not present, but the court declined to continue the hearing.

would not raise a genuine issue of fact. <u>Butler v. Joy</u>, 116 Wn. App. 291, 299, 65 P.3d 671 (2003).

The court concluded that Aiken's motion to compel was "not relevant to [Sanchez and Becerra's motions] before the court" at its April 1 hearing. The court's written order explained it would be "procedural[ly]" "inappropriate to consider discovery motions on their merits until after the court has adjudicated the Defendants' motions to dismiss."

As to the motion for a CR 56(f) continuance, Aiken did not indicate what evidence additional discovery would establish, or how such evidence would raise a genuine issue of fact as to any of his claims—particularly given that the court dismissed his claims for "fail[ing] to state any recognizable claim for any viable remedy." <u>See, e.g.</u>, <u>Perez-Crisantos v. State Farm Fire & Cas. Co.</u>, 187 Wn.2d 669, 686, 389 P.3d 476 (2017) (finding no error where a trial court granted a summary judgment motion before discovery was complete because there was insufficient evidence to show additional discovery would have defeated the motion). We conclude the trial court did not abuse its discretion when it denied Aiken's motions to compel and for a continuance.[6]

II.     <u>Sanchez's and Becerra's Motions to Dismiss</u>

Aiken argues the court erred by dismissing his claims against Becerra and Sanchez. Although Sanchez and Becerra filed motions to dismiss, the court

---

[6] Aiken suggests the court's order "is another example of how . . . *implicit, institutional, and unconscious biases* . . . influenced outcomes . . . in this proceeding." Brief of Appellant at 69-70 (citing <u>Henderson v. Thompson</u>, 200 Wn.2d 417, 435, 518 P.3d 1011 (2022), <u>cert. denied</u>, 143 S. Ct. 2412, 216 L. Ed. 2d 1276 (2023)). But Aiken provides no argument as to how the court's discovery order establishes a prima facie showing of racial bias affecting a verdict as <u>Henderson</u> requires. 200 Wn.2d at 435. The "lack of reasoned argument is insufficient to merit judicial consideration." <u>Palmer v. Jensen</u>, 81 Wn. App. 148, 153, 913 P.2d 413 (1996).

noted that the parties "filed and served declarations and other documents" and the court "considered all of the materials that have been filed," so it "must treat both Defendants' Motions as motions for summary judgment."

When a court considers material "beyond the pleadings," a motion to dismiss is "ordinarily" converted to a motion for summary judgment. Ortblad v. State, 85 Wn.2d 109, 111, 530 P.2d 635 (1975); CR 12(b) ("If . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment"). Whether the appeal is of a motion to dismiss, motion for judgment on the pleadings, or motion for summary judgment, review on appeal is de novo. Borton & Sons, Inc. v. Burbank Props., LLC, 196 Wn.2d 199, 205, 471 P.3d 871 (2020); P.E. Sys., LLC v. CPI Corp., 176 Wn.2d 198, 203, 289 P.3d 638 (2012). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

The court's separate orders granting Sanchez and Becerra's motions to dismiss analyze Aiken's claims identically. The court's orders state as undisputed facts the allegations in Aiken's complaint: that Becerra told Sanchez she heard "loud sexual intercourse noises" coming from Aiken's apartment, that Sanchez

warned Aiken about noise, and that Becerra later called the police about noise coming from Aiken's apartment.[7]

On appeal, Aiken does not challenge the court's dismissal of his RLTA violation, breach of contract, outrage, or criminal harassment claims. Assignments of error not briefed are waived. Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992). Thus, the only claims we address are Aiken's claims of civil conspiracy and breach of the implied covenant of quiet use and enjoyment.

A. Civil Conspiracy

Aiken's claim for civil conspiracy alleged Sanchez and Becerra were "in cahoots" to make noise complaints against him so that he would be evicted. He argues that "[i]f the allegations in [his] complaint were taken as true . . . then a jury could infer that Sanchez and Becerra combined to accomplish an eviction without just cause which is unlawful under RCW 59.18.650." We conclude that the court properly dismissed this claim.

Civil conspiracy requires proof by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the

---

[7] The court's order states, "Although findings of fact are not required with respect to summary judgment motions, there are no material disputes with respect to any of the facts presented by the parties, and no party has objected to the authenticity or admissibility of the documents filed by the parties in support of their respective positions." Though it was improper to characterize these as "findings of fact," we may consider the "findings" to be statements of the undisputed facts. Applying the correct standard on summary judgment review, under which we view the facts and reasonable inferences in the light most favorable to the nonmoving party, Elcon Construction, Inc., 174 Wn.2d at 164, we can reach the same conclusions on the merits as did the trial court.

conspiracy. <u>Corbit v. J.I. Case Co.</u>, 70 Wn.2d 522, 528-29, 424 P.2d 290 (1967). A conspiracy may be proven by circumstantial evidence, but "mere suspicion is not a sufficient ground upon which to base a finding of conspiracy." <u>Id.</u> at 529. Indeed, "[t]he test of the sufficiency of the evidence to prove a conspiracy is that the circumstances must be inconsistent with a lawful or honest purpose and reasonably consistent [o]nly with existence of the conspiracy." <u>Id.</u>

Here, Aiken's argument is not that he was evicted, but that Sanchez and Becerra were in a conspiracy that would cause him to be evicted unlawfully. That is, he alleges a conspiracy for an unlawful purpose, not a lawful purpose accomplished by unlawful means. <u>Cf.</u> <u>Wilson v. State</u>, 84 Wn. App. 332, 351, 929 P.2d 448 (1996) (distinguishing between an unlawful purpose and a lawful purpose accomplished by unlawful means). But his lease included a provision prohibiting "nuisance," "defined as that which disturbs the peace and quiet enjoyment or endangers the health, safety or wellbeing of other Residents," as grounds for eviction.[8] The lease also specifically includes a section on noise:

> Resident(s), family and guests shall have due regard for the peace, comfort and enjoyment of the other Residents in the building. AT ALL TIMES, RESIDENT(S) SHALL NOT CAUSE OR PERMIT ANY NOISE THAT CAN BE HEARD OUTSIDE THE WALLS OF THE PREMISES. Outdoor music is never allowed. During "Quiet Time" (9 PM to 9 AM), Resident(s) shall not cause or permit any noise that can be heard within the walls of any other resident's apartment/unit.

Consequently, a tenant such as Becerra reporting noise violations to an apartment manager such as Sanchez *is* consistent with a lawful purpose and is

---

[8] Nor would it be wrongful under the RLTA to evict a tenant for repeated lease violations if a landlord provides the notice required. <u>See</u> RCW 59.18.650(n).

11

*not* consistent only with the existence of a conspiracy, much less clear, cogent, and convincing evidence of one. Because there is no set of facts here by which Aiken can prove the unlawful purpose of the conspiracy he alleges, we conclude that the court did not err by dismissing Aiken's civil conspiracy claim.

### B.  Breach of the Implied Covenant of Quiet Use and Enjoyment

As to Aiken's claim for breach of the covenant of quiet use and enjoyment, Sanchez argues that what Aiken characterizes as " 'wrongful eviction notices' " were noise warnings, and Aiken "was never evicted, fined, or otherwise punished for these noise complaints." We agree with Sanchez.

The RLTA's definition section begins, "*As used in this chapter*" and states that " 'landlord' means the owner, lessor, or sublessor . . . and in addition means any person designated as representative . . . including, but not limited to, an agent, a resident manager, or a designated property manager." RCW 59.18.030(16) (emphasis added). The RLTA specifies a landlord's duties, as well as under what circumstances a landlord may evict a tenant. See RCW 59.18.060, .650. Separately, "[i]n all tenancies there is an implied covenant of quiet enjoyment of the leased premises." Wash. Chocolate Co. v. Kent, 28 Wn.2d 448, 452, 183 P.2d 514 (1947), cited in Esmieu v. Hsieh, 20 Wn. App. 455, 460, 580 P.2d 1105 (1978) (decided after the passage of the RLTA in 1973).

Aiken cites Cherberg v. Peoples National Bank of Washington, 15 Wn. App. 336, 343, 549 P.2d 46 (1976), rev'd on other grounds, 88 Wn.2d 595, 564 P.2d 1137 (1977), for the proposition that the covenant of quiet enjoyment is breached by "any wrongful act by the lessor which . . . interferes with the tenant's

quiet and peaceable use and enjoyment thereof." Aiken argues that "reading . . . together" the RLTA's definition of landlord and Cherberg means that "[c]ontinually receiving wrongful eviction notices . . . is interference with a tenant's use of his premises." But Aiken does not allege that he was evicted, and the notices he received merely warned him that he must comply with the noise restrictions in his lease. If he did not comply, the notices caution, then he might be evicted.

While the covenant of quiet enjoyment "secures the tenant from any wrongful act" by the landlord, in Cherberg the court explained that "[a]cts or omissions of the lessor render it liable however *only* when it has breached an underlying duty which results in an invasion of the interests secured." 15 Wn. App. at 343 (emphasis added) (landlord's failure to repair an exterior wall that was not part of the premises leased to the proprietors of a restaurant, causing it to close for a week, breached covenant of quiet enjoyment).[9] Warning a tenant that he must comply with noise restrictions in his lease does not breach any duty owed by a landlord.[10]

_____

[9] On discretionary review, the Washington Supreme Court reversed the appellate court and reinstated the jury's award. Cherberg, 88 Wn.2d at 607. It held that the evidence before the jury was sufficient for the court to instruct on the tort of intentional interference with business expectancy. Id. at 606. As to the implied covenant, the Supreme Court stated that it "agree[d with the Court of Appeals that] the evidence presented established that the refusal of the [landlord] to take action to [fix the exterior wall] breached an implied covenant of quiet enjoyment." Id. at 600.

[10] Aiken's lease is between himself and Sky Garden Park Villa LLC, but it is undisputed that Sanchez was the apartment complex's resident manager. While the trial court ignored that the RLTA defines "landlord" to include "designated property manager[s]" and dismissed Aiken's breach of the implied covenant claim in part because he did not have a lease with Sanchez, we may affirm on any basis. See Davidson Serles & Assocs. v. City of Kirkland, 159 Wn. App. 616, 624, 246 P.3d 822 (2011). Here, Aiken's lease contains terms limiting both nuisance behavior and noise heard outside the walls of the premises, so his landlord breached no underlying duty by warning him about noise.

Therefore, there is no genuine issue as to any fact material to Aiken's claim for breach of the implied covenant of quiet use and enjoyment. We agree with Sanchez that the court did not err by dismissing this claim.[11]

III.     Sanctions and Statutory Damages

The court awarded sanctions to both Sanchez and Becerra after determining Aiken's lawsuit was frivolous under RCW 4.84.185 and violated CR 11.[12] The court also awarded Becerra damages under the anti-SLAPP statute, RCW 4.24.510. Aiken challenges both the court's award of sanctions in the form of attorney's fees and the anti-SLAPP damages.

A.    Sanctions under RCW 4.84.185 and CR 11

Aiken argues that at least two of his claims were "cognizable" so his suit was not frivolous in its entirety. He also argues that below, he argued for an extension of the law in good faith, which as a matter of law cannot be frivolous. These arguments are unavailing.

Under RCW 4.84.185, a party prevailing on a dispositive motion may move for expenses and attorney fees incurred in opposing the matter if the court enters written findings, after considering "all evidence presented at the time of the motion," that the claim or defense opposed "was frivolous and advanced without reasonable cause." However, such sanctions "may not be imposed pursuant to RCW 4.84.185 unless the entire case is deemed frivolous." Kilduff v.

---

[11] Aiken also claims the court's dismissal of his claims with prejudice was error because he "voluntarily withdrew his [prior] complaint." While Aiken's prior lawsuit was dismissed without prejudice, he never withdrew the complaint in the present lawsuit. See Beritich v. Starlet Corp., 69 Wn.2d 454, 458, 418 P.2d 762 (1966) (deciding a plaintiff could not move for a voluntary nonsuit after the court had announced its summary judgment decision). The court did not err when it dismissed Aiken's complaint in this lawsuit with prejudice.

[12] The court's separate orders are identical as to the analysis of sanctions.

San Juan County, 194 Wn.2d 859, 874, 453 P.3d 719 (2019). " 'The frivolous lawsuit statute has a very particular purpose: that purpose is to discourage frivolous lawsuits and to compensate the targets of such lawsuits for fees and expenses incurred in fighting meritless cases.' " Id. at 876 (quoting Biggs v. Vail, 119 Wn.2d 129,137, 830 P.2d 350 (1992)) (Biggs I). The statute requires the nonprevailing party, not the party's attorney, to pay attorneys' fees and costs. Id. at 877.

In contrast, "[t]he purpose behind CR 11 is to deter baseless filings and to curb abuses of the judicial system . . . [to] require[ ] attorneys to 'stop, think and investigate more carefully before serving and filing papers' . . . [but] the rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219, 829 P.2d 1099 (1992) (quoting Fed. R. Civ. P. 11 advisory committee note, 97 F.R.D. 165, 192 (1983)). This includes advocacy seeking judicial recognition of new rights. Kilduff, 194 Wn.2d at 877. When imposing sanctions under CR 11, a court " 'must make a finding that either the claim is *not* grounded in fact or law and the attorney or party failed to make a reasonable inquiry into the law or facts, *or* [that] the paper was filed for an improper purpose.' " State ex rel. Quick-Ruben v. Verharen, 136 Wn.2d 888, 904, 969 P.2d 64 (1998) (quoting Biggs v. Vail, 124 Wn.2d 193, 201, 876 P.2d 448 (1994)) (Biggs II). CR 11 applies equally to pro se litigants, as " 'the law does not distinguish between one who elects to conduct his or her own legal affairs and one who seeks assistance of counsel—both are subject to the same procedural and substantive laws.' " In re Marriage of Olson, 69 Wn. App. 621,

626, 850 P.2d 527 (1993) (quoting In re Marriage of Wherley, 34 Wn. App. 344, 349, 661 P.2d 155, review denied, 100 Wn.2d 1013 (1983)).

We review sanctions awarded pursuant to RCW 4.84.185 and CR 11 for abuse of discretion. Kilduff, 194 Wn.2d at 874. Findings of fact supported by substantial evidence, i.e., evidence sufficient to persuade a fair-minded person of the truth of the premise, are verities on appeal. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 819, 828 P.2d 549 (1992).

Sanchez and Becerra are both prevailing parties under RCW 4.84.185 because the court dismissed all of Aiken's claims against both with prejudice. Cf. Elliott Bay Adjustment Co., Inc. v. Dacumos, 200 Wn. App. 208, 213, 401 P.3d 473 (2017) ("a defendant is not deemed the prevailing party when the plaintiff recovers nothing if the action is dismissed without prejudice as a result of the plaintiff's voluntary nonsuit."). Considering the entire record before it, the court entered the required written findings that all of Aiken's claims were frivolous and advanced without reasonable cause. The court further found that his "pleadings have no reasonable basis in law or in fact," that no set of facts will entitle Aiken to the relief he seeks, and that "[t]he purpose of the Plaintiff's lawsuit is to harass the Defendants. The Plaintiff's lawsuit amounts to nothing more than harassment in search of a legal theory." The court found that Sanchez and Becerra warned Aiken to withdraw, but that he proceeded "knowingly and deliberately" with "no reasonable basis." The court thus concluded that Aiken's pleadings "are frivolous for purposes of RCW 4.84.185."

Aiken argues that his breach of the implied covenant of quiet use claim against Sanchez and his civil conspiracy claim against Becerra were "cognizable," so his lawsuit was not frivolous in its entirety. But even if these claims are "cognizable" in the sense that they are legitimate causes of action, as discussed above, the trial court properly concluded Aiken had not alleged facts that stated any claim as a matter of law, and it dismissed his claims on their merits.

The court also concluded Aiken's pleadings were signed and filed in violation of CR 11. In support of CR 11 sanctions, the court entered both alternative types of findings required by Biggs II: first, that Aiken's claims "have no reasonable basis in law or in fact," and second, that the "purpose of [Aiken]'s lawsuit is to harass [Becerra and Sanchez]." Nevertheless, Aiken argues that his complaint was grounded in law and fact because he "made it clear he withdrew" all his claims against Becerra except for civil conspiracy. He argues his RLTA claim against Sanchez was grounded in law because he cited the RLTA. And he argues he requested injunctive relief, which is a "cognizable equitable remedy, [and] therefore, not frivolous." But Aiken proceeded with all of the claims in his complaint despite conferring with opposing counsel more than once and being warned that he faced motions to dismiss and for sanctions. Moreover, a "violation of Rule 11 is complete upon the filing of the offending paper; hence, an amendment or withdrawal of the paper, or even a voluntary dismissal of the suit, does not expunge the violation." Biggs II, 124 Wn.2d at 199-200.

17

Aiken also contends he was arguing "for a good faith extension of the law, which is not frivolous as a matter of law," citing Ames v. Pierce County, 194 Wn. App. 93, 120, 374 P.3d 228 (2016). In Ames, a detective was a recurring witness for the State. 194 Wn. App. at 100. When the prosecuting attorney's office informed the detective that it would disclose declarations and reports the detective made in separate cases as potential impeachment evidence, the detective sued for a writ of prohibition. Id. The trial court dismissed the detective's suit and initially granted the county's motion for CR 11 sanctions, but on reconsideration, the trial court reversed and entered new findings that the detective grounded his arguments in a restatement of the law, law review articles, and two out-of-state cases, and thus, the detective had "provided enough argument, . . . to make a good faith argument for an extension of the law." Id. at 105. This court held that the court's decision not to impose CR 11 sanctions was not an abuse of discretion. Id. at 122. Unlike in Ames, where the detective supported his arguments with restatements, law review articles and out-of-state cases, here, Aiken did not support his argument for a good faith extension of the law with any legal authority. Rather, he argues that he "essentially" pleaded for an injunction and an injunction is a "cognizable" remedy.

Finally, the court ordered sanctions in the form of reasonable legal fees based on CR 11 and RCW 4.84.185. Using the lodestar method, the court entered findings and conclusions regarding the attorney's fees requested by Sanchez and Becerra. The court entered judgment summaries awarding $24,013 in fees to Sanchez and $19,580 in fees to Becerra. We review a fee award for an

abuse of discretion. Pham v. City of Seattle, Seattle City Light, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). Aiken does not challenge the court's findings relating to the amount of attorney fees as erroneous. We conclude that the court did not abuse its discretion by awarding attorney fees to Sanchez and Becerra under RCW 4.84.185 and CR 11.

### B. Anti-SLAPP Damages under RCW 4.24.510

Aiken argues that the "only claim [he] brought against Becerra was for civil conspiracy" and that his complaint "was based upon Aiken's evidence that Becerra agreed with Sanchez to wrongfully evict him by making [noise] complaints," so Becerra is not entitled to anti-SLAPP damages. While Aiken did bring more than one claim against Becerra, we agree with him that because her 911 call was not the gravamen of his complaint against her, awarding her anti-SLAPP damages was error.

RCW 4.24.510, also known as the "anti-SLAPP statute," provides that "[a] person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization." The "purpose of this statute is to 'protect individuals who make good-faith reports to appropriate governmental bodies' because 'the threat of a civil action for damages can act as a deterrent to citizens who wish to report information' to these bodies." City of Seattle v. Ballard Terminal R.R. Co., L.L.C., 22 Wn. App. 2d 61, 79, 509 P.3d 844, review denied sub nom. Seattle v. Ballard Terminal R.R. Co. L.L.C., 200

Wn.2d 1008 (quoting RCW 4.24.500) (Ballard Terminal R.R. Co.). "A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars." RCW 4.24.510. These damages may be denied if the court finds that the complaint or information was communicated in bad faith. Id. This court reviews an anti-SLAPP motion de novo. Dillon v. Seattle Deposition Reporters, LLC, 179 Wn. App. 41, 70, 316 P.3d 1119, review granted, 180 Wn.2d 1009, 325 P.3d 913 (2014).

"It is 'the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies.' " Ballard Terminal R.R. Co., 22 Wn. App. 2d at 78 (quoting Dillon, 179 Wn. App. at 72) (other citations omitted). For example, in Dang v. Ehredt, Dang sued a bank for false imprisonment after the bank called the police with its suspicion that Dang was trying to pass a fraudulent check. 95 Wn. App. 670, 673, 977 P.2d 29 (1999). The bank confiscated her identification and called the police. Id. at 674. The bank claimed immunity under the anti-SLAPP statute, and the trial court granted the bank's motion for summary judgment. Id. at 681. This court affirmed, reasoning that "it was indisputable that *all* the actions out of which the plaintiff's complaint arose were a result of the communication . . . to the police" and "should be encompassed within the scope of the immunity." Id. at 684-85 (emphasis added). Allowing a cause of action for events surrounding a communication to police, while immunizing the communication itself, would thwart the policies and goals underlying the immunity statute. Id. at 683.

Becerra's motion to dismiss argued that RCW 4.24.510 granted her immunity from civil liability for calling law enforcement to report "domestic and/or sexual violence, use of controlled substances," and that she was "fearful to leave her apartment." In its order granting her motion, the court entered findings and conclusions relating to Becerra's "Anti-SLAPP-Law (RCW 4.24.510) Defense." The court found that "considering the totality of circumstances," Aiken's "baseless claims" were "intended for the improper purpose of harassing, intimidating, and silencing her from . . . communicating with law enforcement." The court thus concluded that Aiken's claims were "brought in violation of the Anti-SLAPP Law, RCW 4.24.510," and that Becerra was immune from Aiken's "claims that are based upon [his] allegations that [Becerra] . . . reported to law enforcement that [Aiken] 'hits the walls' and 'gets drunk,' and that she heard a woman screaming, etc." It awarded Becerra $10,000 in damages for prevailing on the anti-SLAPP defense.

But the "principal thrust or gravamen" of Aiken's complaint against Becerra is that she was "in cahoots" with Sanchez to have him evicted based on Aiken's belief that Becerra was the one complaining to Sanchez about him and noise. Becerra *also* communicated with the police, but that was not the principal thrust or gravamen of Aiken's complaint. We therefore agree with Aiken that the court erred when it awarded Becerra statutory anti-SLAPP damages based on the "totality of the circumstances."

### C. Violation of Right to Fair Trial Based on Racial Bias

Aiken argues that the court violated his right to a fair trial because the judge's sanctions and damages decisions were "tainted by racial bias." He argues this court "must reverse" these sanctions because an objective observer aware of racial bias could find the court sanctioned Aiken only because of Becerra's "coded 'dog whistle' language." Brief of Appellant 52 (quoting Henderson v. Thompson, 200 Wn.2d 417, 429, 518 P.3d 1011 (2022), cert. denied, 143 S. Ct. 2412, 216 L. Ed. 2d 1276 (2023)).

But the determination of whether racial bias warrants a new trial must be raised in the trial court,[13] and Aiken did not assert racial bias below as a basis for relief. We thus decline to review this claimed error under RAP 2.5(a).

### IV. Sanctions on Appeal

Sanchez argues Aiken and his counsel should be sanctioned on appeal under RAP 18.9 and CR 11, respectively. Aiken counters that his arguments on appeal are not so totally devoid of merit that no reasonable possibility of reversal exists.

"While CR 11 sanctions were formerly available on appeal under RAP 18.7, a 1994 amendment to RAP 18.7 and 18.9 eliminated the reference to CR 11 in RAP 18.7 and provided for sanctions on appeal only under RAP 18.9." Bldg. Indus. Ass'n of Wash. v. McCarthy, 152 Wn. App. 720, 750, 218 P.3d 196

---

[13] Once a civil litigant makes a prima facie showing of racial bias under the Henderson standard, the court must grant an evidentiary hearing at which "*the trial court* is to presume that racial bias affected the verdict, and the party benefitting from the alleged racial bias has the burden to prove" that the verdict was unaffected. Henderson, 200 Wn.2d at 435 (emphasis added).

(2009). RAP 18.9(a) permits an appellate court to award a party attorney fees as sanctions, terms, or compensatory damages when the opposing party files a frivolous appellate action. Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd., 170 Wn.2d 577, 580, 245 P.3d 764 (2010). An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal. Id. All doubts as to whether the appeal is frivolous should be resolved in favor of the appellant. Id. Raising at least one debatable issue precludes finding that the appeal as a whole is frivolous. Id. See, e.g., Hanna v. Margitan, 193 Wn. App. 596, 615, 373 P.3d 300 (2016) (denying attorney fees for frivolous appeal because appellants prevailed on issues related to the trial court's award of fees and costs as sanctions for filing frivolous lawsuit).

Here, Aiken prevails on the issue of anti-SLAPP damages awarded below. Because he raised at least one debatable issue on appeal, we deny sanctions under RAP 18.9.

CONCLUSION

We affirm the court's orders denying Aiken's motions to amend, to compel, and to delay. We also affirm the order dismissing Aiken's claims with prejudice and granting attorney fees awards to Sanchez and Becerra as sanctions under RCW 4.84.185 and CR 11. We reverse the $10,000 award of anti-SLAPP damages to Becerra under RCW 4.24.510, and we deny Sanchez's request for sanctions against Aiken and his counsel on appeal.

_Cheung, J._

WE CONCUR:

_Brennan, J_     _Dwyer, J._